## WALKER v. MILLER,

(Filed November 7, 1905).

*Partnership—Death of Partner—Deed—Partnership Name
—Latent Ambiguity—Powers of Court—New Parties—
Equitable Title—Jurisdiction·of Justice of Peace.*

1.  The death of a partner, in the absence of any stipulation in the articles of co-partnership to the contrary, works an immediate dissolution, and the title to the assets vests in the surviving partner, impressed with a trust to close up the partnership business, pay the debts and turn over to his personal representative the share of the deceased partner.

2.  An arrangement between distributees and legatees to permit their property with the consent and co-operation of the personal representatives of deceased partners to remain in common and to be used for their joint benefit, adopting the name of the old firm, constitutes a partnership.

3.  A deed made to "Jas. Webb, Jr., & Bro.," a partnership name and style adopted by the distributees and legatees of the deceased partners, is valid, though the partners are not named in the deed, it being a latent ambiguity which may be explained by parol.

4.  The court may at any time before or after judgment direct other persons to be made parties to the end that substantial justice be done.

5.  The owner of an equitable title may sue in a justice's court for the recovery of crops.

ACTION by C. Y. Walker and others against W. J. Miller, heard by *Judge R. B. Peebles,* at the March Term, 1905, of the Superior Court of ORANGE County.

This is an action for the recovery of crops, instituted in justice's court, brought by appeal to the Superior Court, and heard by His Honor, *Judge Peebles,* who by consent, found the facts respecting the title to the land upon which the crops

were grown. For some time prior to 1893, Jas. Webb, Jr., and Jos. C. Webb, were engaged in mercantile business, as co-partners, under the firm name and style of Jas. Webb, Jr., & Bro. Jos. C. Webb died in the year 1893, leaving a last will and testament, properly executed and proven to pass real and personal estate, naming Jas. Webb, Jr., executor, who duly qualified. He bequeathed and devised his entire estate to his widow, Alice Webb.

With the full knowledge and consent of said Alice Webb, the surviving partner and executor continued to conduct the said mercantile business under the same name and style. Mrs. Webb did not become a member of the firm, but permitted and consented that the executor should use her husband's estate to carry on the business as it was done prior to his death.

James Webb, Jr., died in February, 1904, intestate, leaving as his heirs at law and distributees, Mary Webb, his widow, and Brown R. Webb, and J. C. Webb, his sons. The estate of Jos. C. Webb was not settled at the time of the death of said Jas. Webb, Jr.

A. J. Ruffin and H. W. Webb were appointed and duly qualified as administrators of Jas. Webb, Jr., deceased. T. N. Webb and J. Cheshire Webb were appointed administrators, with the will annexed, of Jos. C. Webb, deceased. On the 15th day of February, 1904, the said administrators joined in the publication of a notice to debtors of the firm of Jas. Webb, Jr., & Bro., to make prompt payment, concluding: "We take great pleasure in assuring the old friends and patrons of this firm that the business is to be continued indefinitely under the same style and management, and we earnestly solicit the continuance of your valued patronage, promising to give you, at all times, the best possible values, together with the most courteous treatment." Neither of the administrators put any money into the business, nor did they intend to form a new firm, but did intend to give notice that

the business would be continued under the firm name and style of Jas. Webb, Jr., & Bro., with the funds belonging to the estates of the deceased partners, which had been invested in said business. This action was taken with the full knowledge and consent of the heirs, distributees, devisees and legatees, of both of said deceased partners. On July 18, 1904, the property and assets of the firm of Jas. Webb, Jr., & Bro. were sold to H. W. and J. C. Webb. The old firm was continued for the sole purpose of collecting the debts and settling the business. J. Cox Webb was appointed agent to collect the debts due the firm.

Jas. Webb, Jr., & Bro. held a judgment against defendant Miller, duly docketed in Orange County. D. S. Miller held a mortgage on the lands of defendant Miller, which he duly foreclosed under power of sale therein. The crops in controversy were growing on the lands at the time of the sale. J. Cox Webb became the purchaser at the sale, paying the purchase price from money collected by him on account of the debts due Jas. Webb, Jr., & Bro., and took deed therefor to Jas. Webb, Jr., & Bro. Soon thereafter, Alice H. Webb, widow of Jos. C. Webb, and B. R. Webb, J. Cox Webb, children, and Mary B. Webb, widow of Jas. Webb, Jr., executed a deed for said land to plaintiffs. The land brought at said sale an amount in excess of the mortgage debt. In an action brought by defendant Miller, the administrators of Jas. Webb, Jr., and Jos. C. Webb intervened; the said Miller claimed and recovered on account of his homestead interest in said land, $112.75, the balance, $55, being applied to the judgment held by said administrators. His Honor was of the opinion, upon the foregoing facts, that as the title to the land did not pass by the deed from D. S. Miller to Jas. Webb, Jr., & Bro., the plaintiffs acquired none by the deed of Mrs. Alice Webb and others. He rendered judgment dismissing the action. The plaintffs excepted and appealed.

WALKER *v.* MILLER.

*Jno. W. Graham* for the plaintiffs.

No counsel for the defendant.

CONNOR, J., after stating the case: His Honor was of the opinion that there was no such person or partnership in existence as Jas. Webb, Jr., & Bro. at the time of the sale of the land, and upon the elementary proposition that, to constitute a valid deed of conveyance, there must be a grantor, grantee and thing granted, the deed or paper writing having the form of a deed was inoperative. It is of course common learning that the death of a partner, in the absence of any stipulation in the articles of co-partnership to the contrary, works an immediate dissolution; that the title to the assets vests in the surviving partner, impressed with a trust to close up the partnership business, pay the debts and turn over to his personal representative the share of the deceased partner. We speak only of the personalty in this connection. The facts found by His Honor show that upon the death of Jos. C. Webb, his widow, sole legatee, permitted the surviving partner, who was also executor of her husband, to continue the business under the name of the old or original firm. This condition, with her consent, continued for nine years. The only persons interested in the assets, other than creditors, were Jas. Webb, Jr., and Mrs. Alice Webb. His Honor finds that Mrs. Alice Webb did not become a member of said firm so as to be personally responsible for debts incurred after her husband's death. We do not see how this is material to the questions presented upon this appeal, and we do not express any opinion regarding her liability to creditors, notwithstanding her purpose or intention. Certainly she and the executor were the real, beneficial and only owners of the property and the profits accruing from the business. Upon the death of Jas. Webb, Jr., the same arrangement was made and continued by all of the parties in interest. They were all *sui juris,* and we can see no reason why *inter sese* it was

not competent for them to permit their property, with the consent and co-operation of the administrators, to remain in common and be used for their joint benefit, adopting any name or style agreeable to them for more easily and conveniently carrying out their purpose. The fact that they chose to carry on the business under the name of the old firm, does not change their rights. They could, if they had so preferred, selected any other name. Of course, the old firm, as originally constituted, was dissolved by death of the partners. Whether the parties so intended or not, the legal effect of what they did was to create a new and original arrangement for carrying on business, the capital of which was contributed by the beneficial owners of the property. The fact that they selected the administrators of the deceased partners to manage the business so far as the questions presented upon this record, is immaterial. It may be that if debts were contracted, liabilities not contemplated would have attached. For the purpose of this appeal, the transaction consisted of an arrangement between the distributees and legatees with the approval of the administrators to use the property for a joint and common benefit. The widows and children of the deceased partners were the owners and the administrators were their agents. Viewed from this standpoint, we have parties conducting business in a manner which in a limited, if not absolute sense, constituted a partnership adopting a name, which, by reason of being well-known and enjoying the confidence of its customers, was valuable to them. It was entirely proper, and not unusual, that they should do so—there was no concealment of the personal status of the parties. They gave notice of the death of the original partners. It is not uncommon for a business which, by reason of the credit and reputation for integrity of the founders, possesses value to be conducted, after their death, under its original name. In such cases it is the business of the living owners, and contracts made by or with them, under

the name adopted, have all the force and effect as if made in the names of the individuals to whom it belongs. A man, if he chooses, may carry on business in a name other than his own, or is said by *Erle, C. J.,* in *Maughan v. Sharpe,* 112 E. C. L., 443 : "It is clear that individuals may carry on business under any name and style which they may choose to adopt." That a deed to a partnership, in which the partners are not named, is valid, is abundantly established by this, and many other, courts. In *Murray v. Blackledge,* 71 N. C., 492, the deed was made to Murray, Ferris & Co. ;" to the objection that the deed was inoperative because there was no grantee, *Rodman, J.,* said: "But a deed for land is not for that reason void, any more than a bond for the payment of money is. It is a latent ambiguity which may be explained by parol." *Institute v. Norwood,* 45 N. C., 65. In *Morse v. Carpenter,* 19 Vermont, 614, the mortgage was made to "Morse & Houghton, of Bakersfield." Parol evidence was received to show that two persons were doing business in Bakersfield under that firm name. *Royce, C. J.,* referring to descriptions *ambiguitas patens,* said: "There is, however, an important difference between a description which is inherently uncertain and indeterminate, and one which is merely imperfect, and capable on that account of different applications. To correct the one is, in effect, to add new terms to the instrument; while to complete the other is only to ascertain and fix the application of terms already contained in it." The distinction between a patent and a latent ambiguity is pointed out with his usual clearness by *Pearson, C. J.,* in *Institute v. Norwood, supra.* In *Wakefield v. Brown,* 38 Minn., 361, it is said: "If the true owner conveys by any name, the conveyance, as between the grantor and grantee, will transfer title and in all cases evidence *aliunde* the instrument is admissible to identify the actual grantor. The admission of such evidence does not change the written instrument, or add new terms to it, but merely fixes and applies

terms already contained in it." The same principle controls when the uncertainty or ambiguity is regarding the grantee. The same is held in *Blanchard v. Floyd,* 93 Ala., 53, *Coleman, J.,* saying: "If the proof shows that Blanchard & Burrus, a partnership, were the purchasers of the land they owned as tenants in common an equitable interest in the land." In *Mewage v. Burke,* 43 Minn., 211 (45 N. W. R., 155), a mortgage to "Farnham & Lovejoy" was held valid, *Dickinson, J.,* saying: "While it is necessary to the legal validity of such instruments that there be a grantee having a legal existence, capable of taking, and certainly designated, or so designated that his identity can be certainly ascertained, these conditions are complied with in this case; resort being had, as may be done, to facts beyond the instrument for the purpose of applying the description or designation of the persons named to the persons so described." 1 Jones on Conveyances, 244. In *Maughan v. Sharpe, supra,* the deed was executed to "The City Investment and Advance Co." It was objected that as there was no such corporation, the deed was void. *Erle, C. J.,* said: "The bill of sale under which the defendants claim purports to convey the property to The City Investment and Advance Co., and not to the defendants by name; and it was contended for the plaintiffs that the goods could not pass to Sharpe and Baker * * * It is clear that individuals may carry on business under any name and style which they may adopt, and I see no reason why the defendants may not do so under the name of The City Investment and Advance Co. * * * As between these parties the company, are Sharpe and Baker, and the conveyance in question is a conveyance to those individuals, I cannot therefore say that the deed was inoperative on this ground."

*Williams, J.,* said: "In this case, I apprehend the meaning of the grant is plain; the deed purports and intends to convey the goods to those persons who use the style and firm of The City Investment and Advance Co. They may or may

WALKER v. MILLER.

not be a corporation, but, where it is ascertained that those who carry on business under that name are the defendants, the deed operates to convey the property to them." Sheppard's Touchstone, 236. His Honor, in his judgment, cites the case of *Neal v. Nelson*, 117 N. C., 393, in which it is held that a deed to "A and his heirs," A being dead, is void. This decision is put upon the ground that "heirs" is a word of limitation and not of purchase. It is said that a deed to "A or his heirs" would be good, A being dead, if his heirs could be ascertained. It is well settled that a deed to "A and' his children" is valid to vest the title in them as tenants in common. His Honor was of the opinion that "After July 18, 1904, when the goods and store were sold to H. W. Webb and J. C. Webb, no one constituted the old firm of Jas. Webb, Jr., & Co. It then ceased to exist." He therefore concluded that the deed from D. S. Miller conveyed nothing, leaving the legal title in Miller in trust for the administrators. If it be conceded, as His Honor concluded, that the old firm ceased to exist, certainly the assets belonged to some one. Jos. C. Webb was appointed agent to collect them. There were no debts to pay, the assets then belonged to the legatees and the distributees of the deceased partners. When J. Cox Webb, in executing the trust reposed in him to collect the assets, purchased the land with the money of his principals and directed title to be made in the name of the old firm, it is manifest that it was his purpose to put the title in the persons who paid the purchase money. They ratified his act, treating the land as theirs by selling to the plaintiffs. The defendant, W. J. Miller, recognized the status of the title by suing for and receiving from the purchase money his homestead interest. We can perceive no reason why, both upon reason and authority, in the light of the fact found by His Honor, the latent ambiguity in the description of the parties in the deed is not removed, and the true owners ascertained to be the grantors of the plaintiffs. *Lowe v. Carter,* 55 N. C., 383; *Ryan v.*

*Martin,* 91 N. C., 464; *Simmons v. Allison,* 118 N. C., 776. It is sometimes said that only an equitable title is conveyed in such cases. The better view, we think, is that which we find sustained by the authorities cited, that the ambiguity is latent and open to explanation by which the real party is disclosed and the deed treated as if the name were inserted. If, however, the other view be adopted, the same result would follow in this case. It is well settled, under our judicial system, that a party may recover in ejectment upon an equitable title. Clark's Code, section 177, and cases cited (p. 102). The mortgagee, D. S. Miller, has sold under the power and received the purchase money more than sufficient to pay the mortgage debt. The mortgagor, W. J. Miller, has received his interest in the surplus—the administrators turned over the assets of the late firm of Jas. Webb, Jr., & Bro. to J. C. Webb to·collect for the benefit of the owners—he has in the discharge of his agency applied their money to the purchase of the land and procured a deed to be made, as he understood and intended, to them—they acting upon the belief that the land was theirs, have sold for a valuable consideration to the plaintiffs. We cannot see how a more perfect equitable title could vest in the plaintiffs. If, as the learned judge thought, the naked legal title still remained in D. S. Miller, certainly no one save the plaintiff can call for it. There are no unadjusted questions between the administrators and the grantors of the plaintiffs, or between W. J. Miller and either of the parties to the transactions—he does not suggest any reason why the plaintiff should not recover save that they are not the real parties in interest. We think that they are the real and only parties in interest, and are entitled to recover the crops. If, however, D. S. Miller was a necessary party, we can see no reason why he should not be brought in now to perfect the record. The action should not have been dismissed. The court may at any time before or after judgment direct other persons to be made parties to the end that substantial

justice be done. While it is true that a justice has no power to administer an equity—the owner of an equitable title may sue in the justice's court. *Lutz v. Thompson,* 87 N. C., 334. Many of the difficulties which obstructed the courts in the administration of justice and necessitated the dismissal of suits because of a divided jurisdiction between courts of law and courts of equity—or the failure to sue out the writ applicable to the right to be enforced—are avoided by the reformed codes of procedure. Courts now seek to ascertain the facts and administer the right to the real party in interest. Amendments are liberally made to enable the court to so mould the judgment that substantial justice is administered. Upon the facts found by His Honor judgment should have been entered that the plaintiffs are the owners of the crops in controversy. Judgment will be entered accordingly in the Superior Court of Orange.

Error.