UNITED STATES FIDELITY AND GUARANTY COMPANY v.
A. F. MESSICK GROCERY COMPANY.

(Filed 29 April, 1908).

**Principal and Surety—Default of Principal—Payment by Surety—
Justices of the Peace—Jurisdiction.**

Upon the payment of a debt by a party secondarily liable there-
for, he is substituted in equity to the rights of the creditor, and
may sue thereon, as the creditor could have done, without any
actual or legal assignment, under the doctrine that equity con-
siders that as done which should have been done. Therefore,
when the amount is two hundred dollars or less, a suit by a surety
for the recovery of money misappropriated by his principal, which
he has paid, is within the jurisdiction of a justice of the peace,
certainly where the creditor has made a written assignment of
the debt to the surety, making the latter both the legal and
equitable owner of the debt, and the action when brought in the
Superior Court should be dismissed.

ACTION tried before *Justice, J.,* and a jury, at March Term,
1908, of FORSYTH.

This action was brought in the Superior Court to recover
the sum of $147 alleged to be due by the defendant to the
plaintiff by reason of a payment made by the latter to the
Southern Cotton Oil Company under a bond of indemnity to
secure the faithful performance of the duties of J. W. Mori-
sey as agent of the oil company. For the purpose of dis-
posing of this appeal we need only set forth substantially the
allegations of the plaintiff as made in his complaint, and the
facts which the evidence tended to prove as stated in the brief
of its counsel.

The material facts alleged in the complaint are these: The
plaintiff is a corporation duly authorized to become surety on
fiduciary, judicial and other bonds, and it was during the
years 1903 and 1904 and is now engaged in the business of
making such bonds by becoming surety on the same. During
the years 1903 and 1904 J. W. Morisey was living in Wins-
ton, N. C., and acting as the agent for the Southern Cotton

Oil Company in the sale of lard and other products of the said oil company, and Morisey executed a bond for the faithful accounting for all property and the payment of all moneys received by him as the agent of the oil company, and the plaintiff became surety on said bond to the oil company.

The defendant, A. F. Messick Grocery Company, had been dealing for some time prior to 1903 and 1904 and during said years with Morisey as agent of the oil company, and had been buying the lard of the oil company from Morisey as its agent, and the course of dealing between Morisey and the defendant had been that the lard was sold by Morisey for the account of the oil company, and remittances were made direct by A. F. Messick Grocery Company to the oil company at its office in Savannah, Georgia, and Morisey had no authority to receive payment for the sale of the products of the oil company, nor did the defendant have any right to pay him for such sales, as the defendant well knew. During the spring of 1904 the defendant, A. F. Messick Grocery Company, bought from J. W. Morisey, agent of the oil company, thirty-five tubs of lard, containing sixty pounds each, of the value of $147, and paid therefor direct to Morisey the said $147 instead of remitting to the oil company, as had been the custom between the parties and as it knew was required by the oil company. This method of payment was resorted to by Morisey that he might appropriate the said $147 belonging to the cotton oil company to his own use, which he did, and never accounted for the same to his principal, but converted it to his own use, and during the summer of 1904 was a defaulter in a large amount, and committed suicide.

The defendant well knew that it had no right or authority to pay Morisey the cash instead of remitting to the oil company, and it had notice of Morisey's fraudulent purposes in thus using the property of his principal for his own purposes, and well knew that Morisey was a man of no property and was insolvent. At the time of his death Morisey was in-

debted to the oil company for money and property of said company misappropriated by him in the sum of $770.53, in which was included the $147, the value of the lard sold to the defendant, as heretofore set out.    On 13 February, 1905, the plaintiff, as surety on the bond of Morisey to the oil company, had to pay and did pay the sum of $770.53 to said company, it being the amount for which said Morisey was liable.

The material facts which the testimony tended to prove were as follows: Morisey, during the years 1903 and 1904, was the agent of the oil company at Winston, N. C., for the sale of commodities consigned to him by the said company, and as such agent entered into a bond for $1,000 for the faithful discharge of his duties, with the plaintiff as surety. Morisey had no right or authority as such agent to collect or receive payment for the goods of the Southern Cotton Oil Company sold by him, and this was known to the defendant. In the month of March, 1904, the defendant bought thirty-five tubs of lard consigned by the Southern Cotton Oil Company to Morisey and paid him for said lard $147.

At the time of Morisey's death "he was short in his account with the oil company 12,760 pounds of lard, equal in value to $770.53," which amount the surety company, on 13 February, 1905, paid to the oil company, and in which amount of $770.53 was included the $147 paid by A. F. Messick Grocery Company to Morisey.

At the close of the evidence the court, on motion of the defendant, dismissed the action, and the plaintiff appealed.

*Lindsay Patterson* for plaintiff.
*L. M. Swink* and *Manly & Hendren* for defendant.

WALKER, J., after stating the case: The only question to be considered in this case is whether the action was properly brought in the Superior Court, or is it one of which a justice of the peace has jurisdiction?    The plaintiff contends that it can recover only under the equitable doctrine of subrogation,

as when it paid the amount of Morisey's defalcation to the oil company it acquired the rights of the latter company as against its agent, Morisey, by subrogation. Even if it did, the cause of action which the oil company had at law against Morisey, and which the plaintiff thus acquired, was not converted into one in equity. The plaintiff has the right to sue Morisey at law in the same manner as the oil company could have done before the payment to it was made, although the right to do so was passed to the plaintiff by virtue of an equitable assignment to it. The rights acquired by subrogation do not depend upon a written assignment of the claim. Upon payment by the party who is secondarily liable for a debt to the creditor he is substituted to all the rights of the latter as against the party primarily liable, and may sue upon the debt as the creditor could have done, without any actual or legal assignment of it. Equity considers that as done which should be done. *Insurance Co. v. Railroad,* 132 N. C., 75; *Cunningham v. Railroad,* 139 N. C., 427. This is a familiar principle and has been applied in several cases by this Court. In *Markham v. McCown,* 124 N. C., at p. 166, the Court said: "It must be admitted that a justice of the peace has no jurisdiction *to declare an equity or to enforce an equitable lien,* while on the other hand it seems to us that it must be admitted that a justice of the peace has the jurisdiction to enforce the collection of money which *equitably belongs to a party.* The distinction between the two is clear to our minds." So, in *Walker v. Miller,* 139 N. C., 448, it was held that, while a justice of the peace has no power to administer an equity, the owner of an equitable title may sue in a justice's court, citing *Lutz v. Thompson,* 87 N. C., 334. The same distinction between an equitable cause of action and an equitable assignment of a legal cause of action is recognized and enforced in *Nimmocks v. Woody,* 97 N. C., 1, where it is said that the equitable assignee can maintain an action upon

147—33

the implied promise of the original debtor to pay back the money which the plaintiff had been compelled to pay for his benefit.

But in this case there was a written assignment to the plaintiff of the claim of the oil company against its agent, Morisey, so that the plaintiff has acquired both the legal and equitable title. Why, therefore, should not a justice of the peace have jurisdiction of the action? Besides, the plaintiff is not seeking to be subrogated to the rights of the oil company in any action against it. The subrogation has already been effected and has been followed, as we have said, by an actual assignment of the claim.

It was not necessary for the plaintiff to charge fraudulent collusion between its agent and the defendant, and none was established. It admits that the agent had authority to sell the goods, but no authority to collect the money, which should have been remitted directly by the defendant to the plaintiff, and that the defendant had knowledge of these facts. The defendant acquired title to the goods, as the agent had authority from the plaintiff to sell them, and if the defendant wrongfully paid the agent it is still liable to the plaintiff for the price of the goods. But if the agent had the authority both to sell the goods and to collect the purchase price, as contended by the defendant's counsel upon the evidence, then the defendant is not liable. In any view of the case we think there was no error in the ruling of the court.