## FIDELITY UNION CASUALTY CO. v. HAMMOCK et ux.   (No. 9122.)

Court of Civil Appeals of Texas.   Galveston. April 12, 1928.

Rehearing Denied May 3, 1928.

1. Partnership ⊚⟫255(1)—Widow and heirs of deceased partner had right to agree with surviving partner for continuance of firm business under original firm name.

After death of partner, partner's widow and heirs had right and authority to agree with surviving partner that their shares in firm property might be continued to be used by the partnership and the business of the firm continued under the original firm name.

2. Insurance ⊚⟫156(3)—Company insuring partnership against injuries to employees held not entitled to avoid policy for death of partner before issuance of policy, where business was continued under original firm name.

Insurance company issuing policy in name of partnership covering injuries to employees, under Workmen's Compensation Act (Rev. St. 1925, art. 8306 et seq.) held not entitled to avoid policy on death of employee on ground that one of members of firm was dead at the time policy was issued and that therefore there was no firm in existence and no persons employed by it, especially where widow and heirs of deceased partner agreed with surviving partner for continued use of firm property by partnership and continuance of firm business under original firm name.

3. Partnership ⊚⟫245(1)—Surviving partner has exclusive right to control firm assets for benefit of himself and deceased partner's estate pending settlement of partnership affairs.

Surviving partner, even without consent of heirs and creditors of deceased partner, has legal title to firm assets, with exclusive right to possession and control thereof for purpose of disposing of the same for the benefit of himself and the estate of his deceased partner, which right continues until partnership affairs are settled.

4. Partnership ⊚⟫255(1)—Surviving partner settling partnership affairs had right to take out insurance under original firm name.

Surviving partner carrying on firm business for settlement of partnership affairs had right to take out policy insuring it against injuries to employees under original firm name, even if widow and heirs of deceased partner had not consented.

5. Master and servant ⊚⟫375(2)—Injuries to employee alighting from employers' truck for purpose of boarding another truck to take him back to work were suffered in furtherance of employers' business, though employee was going home for noon meal; "furtherance of business" (Rev. St. 1925, art. 8309, § 1, subsec. 5[4]).

Employee of sawmill, engaged in unloading lumber, who used trucks of his employers in going to and from work and going to home for his meals, and who, while riding with employers' truck driver for purpose of going home for noon meal, was injured when he attempted to alight from truck to get on another truck to return to his work, sustained injury while engaged in or about furtherance of the affairs or business of his employers, under Workmen's Compensation Act, Rev. St. 1925, art. 8309, § 1, subsec. 5(4), and recovery for such employee's death was therefore proper.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Furtherance of Business.]

6. Master and servant ⊚⟫348—Workmen's Compensation Act is liberally applied.

Workmen's Compensation Act (Rev. St. 1925, art. 8306 et seq.) is given a most liberal application, to the end that it may most effectually fulfill and discharge purposes for which it was enacted.

Appeal from District Court, Anderson County; Ben F. Dent, Judge.

Suit by the Fidelity Union Casualty Company against M. C. Hammock and wife to set aside an award of the Industrial Accident Board granting compensation for the death of William F. Hammock. Judgment for defendants, and plaintiff appeals. Affirmed.

Collins & Houston, of Dallas, for appellant.

Butler, Price & Maynor, of Tyler, for appellees.

LANE, J.   On May 15, 1926, William F. Hammock was an employee of Aycock & Poole, a copartnership, who were subscribers

---

⊚⟫For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

under the Workmen's Compensation Act of the State of Texas (Rev. St. 1925, art. 8306 et seq.). On said date Aycock & Poole held a policy issued by the Fidelity Union Casualty Company which by its terms indemnified Aycock & Poole against loss by reason of injuries which might be suffered by their employees while engaged in and about the furtherance of the business of their employers. On said 15th day of May, William Hammock received injuries from which he died, leaving surviving him his father, M. C. Hammock, and his mother, Susie Hammock.

In due time, and after due notice, the parents of the deceased presented their claim for compensation to the Industrial Accident Board of this state. On the 1st day of February, 1927, said board made an award directing the Fidelity Union Casualty Company to pay certain compensation to M. C. and Susie Hammock on account of the fatal injury received by their son, William Hammock. In due time the casualty company gave notice in writing to the Industrial Accident Board that it was not satisfied with the award made, and within twenty days after the giving of such notice it filed suit in the district court of Anderson county, Tex., to set aside the award, final ruling, and decision of said Accident Board.

Hammock and wife answered and alleged facts constituting a cause of action against the casualty company, which, if proven, would entitle them to judgment. They alleged that they were poor people, dependent upon their daily wages and manual labor for support, that they were without funds, that the expenses incurred by them incident to the injury, sickness, and death of their son had put them in great financial strain, etc.; and they prayed for a lump sum settlement. The sum prayed for was $7 per week for 360 weeks, beginning on the 15th day of May, 1926, together with the interest thereon. They also prayed that their attorney be allowed one-fourth the amount to be recovered, or such sum as the court deemed fit and proper.

By supplemental petition the casualty company denied generally the allegations of the answer of Hammock and wife.

A jury was waived, and the cause was tried before the court. Judgment was rendered, denying the prayer of the casualty company and adjudging that Hammock and wife recover jointly from the casualty company the sum of $1,794.40, with interest thereon at the rate of 6 per cent. per annum from date of judgment, and that Butler, Price & Maynor, defendants' attorneys, recover from the casualty company the sum of $598.-10. From such judgment the casualty company has appealed.

The policy sued upon was issued to Aycock & Poole on the 24th day of May, 1925. The names of the persons composing the firm

were stated in the policy as A. M. Aycock and R. H. Poole. It was shown that A. M. Aycock died in 1923 and left surviving him his widow and several children; that by agreement between Poole and the heirs of A. M. Aycock the business of the firm was continued under the firm name of Aycock & Poole, and was so conducted under such name at the time the policy sued upon was issued.

[1, 2] By its first proposition appellant contends that, since A. M. Aycock was dead at the time of the issuance of the policy, the policy as issued was unenforceable against appellant, because upon the death of A. M. Aycock the firm of Aycock & Poole was by law dissolved and ended, and there was no such firm in existence, and hence there were no persons employed by such firm to be covered by the policy.

We think appellant's contention should be overruled. After the death of A. M. Aycock, Mrs. Aycock, the widow, and the other heirs of A. M. Aycock, had the right and authority to agree with R. H. Poole, the surviving partner of the firm of Aycock & Poole, that their shares in the firm property might continue to be used by the partnership and the business of the firm continued under the original firm name. 20 R. C. L. § 226, p. 990; Walker et al. v. W. J. Miller, 139 N. C. 448, 52 S. E. 125, 1 L. R. A. (N. S.) 157, 111 Am. St. Rep. 805, 4 Ann. Cas. 601; Merchants' Ins. Co. v. Bonnet (Tex. Civ. App.) 42 S. W. 316; Id. (Tex. Civ. App.) 48 S. W. 1110.

It will be noted that appellant makes no contention that the policy should be held void because of any false or fraudulent representation in its procurement, which would be material to the risk it assumed. It seeks to avoid liability only upon the contention that the policy is void because by its terms it was to cover only the employees of Aycock & Poole, a copartnership composed of A. M. Aycock and R. H. Poole, and that, as there was no such partnership, the policy covered no employees.

It is clear, we think, that it was the intention of appellant in the issuance of the policy to cover the employees of the business managed by R. H. Poole, known by the name of Aycock & Poole, and that it was not concerned as to who, in fact, composed the partnership. The case of Bonnet v. Ins. Co., above cited, was one in which Bonnet procured a policy of insurance issued to Bonnet Bros. covering a certain stock of goods, of which he was the sole owner. The goods were destroyed by fire, and Bonnet brought the suit against the insurer upon the policy. Bonnet alleged that, while the policy was issued in the name of Bonnet Bros., he was in fact at all times the sole owner of the goods insured and the sole and only member of the firm named. The insurance company urged exceptions to the petition on the ground that it showed on its face that Bonnet had con-

cealed his interest in the property insured, and that by the terms of the policy it was null and void on account of such concealment.

The facts of that case, as shown in the decision reported in Merchants' Ins. Co. v. Bonnet (Tex. Civ. App.) 48 S. W. 1110, are that at one time Rafael Bonnet, the plaintiff, and his brother, W. A. Bonnet, were partners under the firm name of Bonnet Bros., but that W. A. Bonnet had withdrawn from the firm, though the business was continued under the firm name of Bonnet Bros. It was provided in the policy that it should be void if the insured had concealed or misrepresented any material fact concerning the insurance or the subject thereof, or if the interest of the insured in the property be not truly stated in the policy. In deciding that case Judge Fly, speaking for the San Antonio court in 42 S. W. 316, said:

"We are of the opinion that the allegations of the petition do not bring the case of appellant within the purview of the language quoted. There is no statute of this state that prohibits the use of firm names which fail to indicate the members of the partnership, and appellant had the right to do business for himself under a firm name, if he so desired, and the right to insure his property in that firm name. His representation that the property belonged to Bonnet Bros. was correct, at the same time that he owned the entire interest in the goods. The misrepresentation as to a fact that would vitiate the contract must have been as to something material."

In Walker v. Miller, supra, it is said:

"It is of course common learning that the death of a partner, in the absence of any stipulation in the articles of copartnership to the contrary, works an immediate dissolution; that the title to the assets vests in the surviving partner, impressed with a trust to close up the partnership business, pay the debts and turn over to his personal representative the share of the deceased partner. We speak only of the personalty in this connection. The facts found by his honor show that upon the death of Jos. O. Webb, his widow, sole legatee, permitted the surviving partner, who was also executor of her husband, to continue the business under the name of the old or original firm. This condition, with her consent, continued for nine years. The only persons interested in the assets, other than creditors, were Jas. Webb, Jr., and Mrs. Alice Webb. * * *

"Upon the death of Jas. Webb, Jr., the same arrangement was made and continued by all the parties in interest. They were all sui juris, and we can see no reason why inter sese it was not competent for them to permit their property, with the consent and co-operation of the administrators to remain in common and be used for their joint benefit, adopting any name or style agreeable to them for more easily and conveniently carrying out their purpose. The fact that they chose to carry on the business under the name of the old firm, does not change their rights. They could, if they had so preferred, have selected any other name. Of course, the old firm, as originally constituted, was dissolved by death of the partners. Whether the parties so intended or not, the legal effect of what they did was to create a new and original arrangement for carrying on business, the capital of which was contributed by the beneficial owners of the property. The fact that they selected the administrators of the deceased partners to manage the business so far as the questions presented upon this record, is immaterial."

[3, 4] If, however, there had been no agreement on the part of the heirs of Aycock that their share of the property might continue to be used by the partnership, and that the partnership be continued under its original name, R. H. Poole, the surviving partner, would nevertheless have had, as against the heirs of A. M. Aycock, his deceased partner, and the creditors of such partner, the legal title to the firm assets, with exclusive right to the possession and control thereof for the purpose of disposing of the same for the benefit of himself and the estate of his deceased partner. Such ownership of the surviving partner would continue until the partnership affairs were settled. 20 R. C. L. 232, p. 995. Such being the right of Poole, he had the right to take out the policy under the firm name of Aycock & Poole. Merchants' Ins. Co. v. Bonnet (Tex. Civ. App.) 42 S. W. 316.

[5] Appellant makes the further contention that the undisputed evidence shows that, at the time the deceased, William Hammock, received his injury, from which he died, he was not engaged in or about the furtherance of the affairs or business of his employer, and that the injuries from which he died did not originate in or have anything to do with the business of his employer, and therefore the court erred in rendering judgment in favor of the plaintiffs.

We cannot sustain such contention. By section 1, subsection 5 (4) of article 8309, Revised Statutes of 1925, it is provided that recovery may be had for injuries of every kind and character "having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

It was shown that on May 15, 1926, there was being operated in Anderson county, Tex., about 7 miles distant from the town of Frankston, a saw mill; said mill was being operated in the manufacture of lumber and the business was on said date, as it had been for a number of years prior thereto, conducted under the firm name of Aycock & Poole.

It is shown that, in the furtherance of such business, lumber was transported upon trucks from the mill to the railroad at Frankston to be loaded into cars for shipment. It is shown that William Hammock, a minor, was employed on the 11th day of May, 1926, by R. H. Poole, as manager of the sawmill busi-

ness being conducted under the firm name of Aycock & Poole, to stack lumber in cars at Frankston as it was brought from the mill to said town. At all times during his employment William Hammock resided with his parents at the mill, and it was understood by him and his employer that he was to go back and forth from his home to his work on the trucks of Aycock & Poole. He went to his work on the first truck out and returned to his home on one of them in the evening, and on several occasions he returned on one of the trucks to his home for his noon meal; his duties, however, required him to be at the car in which the lumber was to be placed as it arrived. On or about the 15th day of May, 1926, William Hammock went from his home on one of the trucks of Aycock & Poole, driven by one Hatton, to Frankston, to stack in a car a truck load of lumber which was being transported by Hatton from the mill to Frankston. After this car of lumber was unloaded and stacked, there was no other lumber to be stacked at hand, and, as the truck driven by Hatton was to return to the mill for another load, William Hammock decided to return to his home for his noon meal on the truck driven by Hatton. The truck left for the mill about 11 a. m., and William Hammock told Hatton that he was going on his truck to his home for dinner. Hatton, in reply, told William that when he (Hatton) left the mill another truck was being loaded, and that he thought it would reach the unloading place before he could go home to his dinner and return.

The witness Hatton, testifying relative to what took place, said that William Hammock said he would come on out until he met the other truck, and that, if he met it, he would catch it and go back to the car on it; that they met the other truck about a quarter of a mile from Frankston, and that William Hammock, in getting off of the truck driven by him to get on the other truck to return to his work, fell and injured his arm and knee; that William Hammock caught the other truck and returned to his work.

He testified further, that William told him that, if he did not meet the other truck, he would eat dinner at home, that he could eat dinner before he (Hatton) could reload, and that they could get back to the car before the other truck would get there to unload, and that he told William that they could catch the other truck all right, and that, if he wanted to go home for dinner, it was up to him.

It was shown that in getting off of the Hatton truck to catch the other truck William Hammock suffered the injury from which he died.

Applying the interpretation of the provision of section 1, subsec. 5, subd. 4, of article 8309, supra, as uniformly made by our courts, to the facts of the present case, we hold that William Hammock was, in contemplation of law, in the employment of Aycock & Poole at the time of his injury; that such injury was one suffered by him while engaged in and about the furtherance of the affairs or business of his employer, and was one "having to do with and originating in the work" of his employer. Kirby Lumber Co. v. Scurlock, 112 Tex. 115, 246 S. W. 76; Lumberman's Recip. Ass'n v. Behnken, 112 Tex. 103, 246 S. W. 72, 28 A. L. R. 1402; Jones v. Casualty Co. (Tex. Civ. App.) 250 S. W. 1073; Employers' Liability Assurance Corp. v. Light (Tex. Civ. App.) 275 S. W. 685.

In the Behnken Case, 112 Tex. 103, 246 S. W. 72, 28 A. L. R. 1402, it is held that an injury has to do with, and arises out of, the work or business of the employer when it results from a risk or hazard which is reasonably inherent in or incident to the conduct of such business. In that case the court quotes with approval from Honnold on Workmen's Compensation, vol. 1, § 122, p. 453, as follows:

"Where the injury has arisen through the workmen using special modes of access provided by their employers to enable them to go to or come from the actual place of employment, the courts have uniformly held that it arose out of the employment."

In the case before us, the use of the trucks by William Hammock in going to and coming from his work was, by the conduct of the parties, if not by their express agreement, an instrumentality of the employment. It cannot therefore be said that William Hammock was not in the employment of Aycock & Poole while riding on said truck in going to and from his work. The fact that William Hammock left his place of work temporarily, with the intention of going to his home for his noon meal under the belief that he might have time to get his meal and return to his labors in proper time would not constitute such an abandonment or cessation of his employment as would destroy the right of his parents to recover compensation under the provisions of the Workmen's Compensation Act for his death, the result of injuries received while in the employment of Aycock & Poole.

In the case of Kirby Lumber Co. v. Scurlock, 112 Tex. 115, 246 S. W. 76, the court quotes with approval from International & G. N. Ry. Co. v. Ryan, 82 Tex. 565, 18 S. W. 219, the following:

"In this case we think it is evident, from the facts testified to by the appellee, that he was, in contemplation of law, in the employment of the company at the time of the collision. His presence in the car on the side track at the time of the collision can be explained in no other way under the proof. It was only by reason of the fact that he was an employee of the company that he was in the car on the side track at the time he was injured. We do not wish to

be understood as holding that if the fact was established that his employment had terminated he could not recover in a proper case. But we mean to say that we do not think that under the facts in this case his employment had ceased, or that he was not, in contemplation of law, at the time of the injury, in the service of his employer. We think that he was in such employment."

It was only by reason of the fact that William Hammock was an employee of Aycock & Poole that he was on the truck from which he fell, and it is made clearly to appear that his employment had not terminated at the time of his injury.

From the facts shown, it seems to have been contemplated by the parties that William Hammock should use the trucks of his employers in going to his work and from his place of work to his home for rest and for his meals at such times as not to interfere with his duties. The undisputed facts show that at the time William Hammock received his injury he had started to go to his home to his noon meal, but, seeing that another load of lumber would reach the place of unloading and require his services, he undertook to leave the empty truck to board the loaded truck for the purpose of resuming his labors, and while undertaking to make such change he fell and suffered injuries from which he died.

[6] It seems to have been uniformly the practice of our courts to give to the terms of the Workmen's Compensation Act a most liberal application, to the end that it may most effectually fulfill and discharge the humanitarian purposes for which it was enacted. We feel constrained to follow such practice, and in doing so it becomes our duty to hold that William Hammock received his injuries under circumstances which would entitle his parents to compensation for his death.

Having reached the conclusions above expressed, it becomes our duty to affirm the judgment, and it is so ordered.

Affirmed.