HERBERT G. HANAN, EXECUTOR OF THE ESTATE OF HERBERT W. HANAN, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE. RESPONDENT.

Docket No. 58931. Promulgated November 6, 1934.

*Fred A. Woodis, Esq.*, for the petitioner.
*R. W. Wilson, Esq.*, for the respondent.

522

SEAWELL: This proceeding involves a deficiency in income tax of the decedent, Herbert W. Hanan, for the fiscal year ended October 31, 1928, in the amount of $50,209.36, and results from the disallowance by respondent of an amount which it is alleged decedent paid to compromise a lawsuit and to buy his peace from the estate of a deceased partner.

A notice of deficiency was mailed to the decedent, Herbert W. Hanan, who at that time resided at 118 Eighth Avenue, Brooklyn, New York. The decedent filed the petition and thereafter on July 21, 1933, died. Robert W. Hanan became executor of decedent's estate, but he also died before the hearing, and Herbert G. Hanan succeeded him in that office and was substituted as petitioner herein.

At the hearing all issues involved in the proceeding were definitely abandoned by petitioner, except that growing out of the allegation (4–I of petition) that respondent " erred in disallowing the deduction of $261,754.47, which petitioner paid to the estate of Addison G. Hanan to compromise a pending lawsuit." In reference to this alleged payment petitioner further alleges that the sum paid was in excess of all sums which he owed said estate and was paid in connection with his business and solely to buy his peace. These allegations, together with all allegations of error on the part of respondent, were denied by respondent in his answer.

Herbert W. Hanan, deceased, the original petitioner in this proceeding, and Addison G. Hanan for many years and to the time of Addison G. Hanan's death on July 16, 1923, were copartners engaged in the business of manufacturing and selling footwear in New York and Chicago under the firm name of Hanan & Son. The contract of partnership provided that upon the death of a partner his estate should be fixed and measured by ascertaining, and liquidated by paying to the estate of the deceased partner, the amount of the cash capital actually invested by such deceased partner in the business, or standing to his credit on the books of the firm, together with his share of the net profits earned down to the date of his death; that the surviving partner was to pay all the indebtedness of the firm; and that interest on any capital of the partners was to be credited to their respective accounts at the rate of 5 percent per annum, with adjustments to be made for capital withdrawn.

After the death of Addison G. Hanan, Herbert W. Hanan, the surviving partner, continued to operate the business; he caused to be prepared a statement of the account of the partnership affairs which, as prepared, showed that the value of the interest of Addison G. Hanan in the business amounted to $1,097,918.10, and about February 1, 1924, submitted to the executors of the estate of Addi-

son G. Hanan said statement of account, to which they objected, as they were not satisfied with the method by which the amount was arrived at. At some time prior to December 6, 1928, but the record does not show when nor upon what understanding or agreement, if any, decedent paid to the estate of Addison G. Hanan the amount of $1,097,918.10 and the further sum of $105,655.90 claimed by decedent to be an overpayment after interest adjustments. The executors of the estate of Addison G. Hanan at some indefinite time brought action in the Supreme Court of New York against Herbert W. Hanan, individually, and as surviving partner of the two partnerships of Hanan & Son, and therein asked for an accounting. In an agreement dated December 6, 1928, executed by decedent and the executors of Addison G. Hanan, it was agreed that this action should be discontinued "upon the approval of this agreement as hereinafter mentioned, without costs to any party as against the others," and that Herbert W. Hanan should pay to the executors of the estate of Addison G. Hanan, who agreed also to accept, "the sum of Nine hundred thousand ($900,000.) Dollars less the said sum of $105,655.90 i. e., the sum of $794,344.10 with interest * * * in full settlement of said action * * *." In that agreement the executors acknowledged receipt on April 25, 1928, from Herbert W. Hanan of the sum of $200,000 on account of said $794,344.10, leaving a balance due from Herbert W. Hanan to the executors "on account of said action of $594,344.10." In the agreement it was further stated:

It is mutually agreed that this agreement shall not in anywise be binding on the parties hereto unless and until same shall be approved by order or decree of a court of competent jurisdiction * * *.

There was no evidence offered that the agreement was ever approved by any court.

Petitioner through his counsel contends and insists that whatever sum was paid during the taxable year by decedent for settlement of the lawsuit is deductible from gross income under section 23 (a) or (e) (1) of the Revenue Act of 1928, the pertinent parts of which are as follows:

In computing net income there shall be allowed as deductions:

(a) *Expenses.*—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *

* * * * * * *

(e) *Losses by individuals.*—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

(1) if incurred in trade or business.

It would appear that, unless what petitioner paid out was to him either an *expense* or a *loss*, these provisions of the statute are not applicable. However, counsel for petitioner in his brief makes argu-

ment that the amount paid was "*an expense necessary* in order to protect the business", and relies on the cases of *Kornhauser* v. *United States*, 276 U. S. 145, and *H. M. Howard*, 22 B. T. A. 375, with other cases supporting the doctrines therein stated.

These cases are distinguishable from the one at bar. Kornhauser paid legal fees in defense of a suit for an accounting brought against him by a former partner, the suit growing directly out of the conduct of the partnership business. The claim asserted against Kornhauser was not sustained, as the Court points out, and judgment was rendered in his favor. The money he expended for attorney fees in the litigation was held to be for ordinary and necessary expense and was allowed him as a deduction. If the suit in the *Kornhauser* case had been for an accounting and payment to the plaintiff for his share in the partnership assets and Kornhauser had admitted failure to make payment, or underpayment, to his former partner and promised, by way of compromise, to make payment of a balance due, it would have been a different case and certainly more like the case here, and it is inconceivable that the tax result would not also have been different. In the *Howard* case, *supra*, Howard with others was sued not for the recovery of partnership assets, but for an alleged tort growing out of matters connected with their business. Howard and the others, it at least inferentially appears, owed the plaintiff nothing, but they found it advantageous to themselves and their business to end the litigation by buying their peace, and Howard paid the price personally and the compromise payment of damages as well as attorney fees was allowed to him as a deduction. Petitioner in the case at bar was not sued for tort, and there are no attorney fees or other outlay for expenses involved.

As we see the situation, when Addison G. Hanan died, the surviving partner, his brother, the petitioner here, became by operation of law a trustee of his interest in the partnership assets and accountable to his estate for the value thereof. *Walker* v. *Miller*, 139 N. C. 448; 52 S. E. 125. If petitioner paid the estate $1,097,918.10 and that was only a portion of the amount due the estate, as it would seem to have been since the petitioner himself agreed to pay more thereafter, the legal representatives of the deceased had the right, and it was their duty, if necessary, to bring action in court to compel the payment of the remainder. If a trustee or debtor fails to pay when it is his duty to pay and is sued when he is in default and pays no more than is due, what he pays is not an expense or loss in any proper meaning of the statute.

Petitioner's allegation that the amount paid was more than was due is supported by no word of proof. His further allegation that

such payment was made to buy his peace lacks also any evidence to sustain it. There is no suggestion in the evidence that decedent's business was in any way molested, threatened, or interfered with by the executors of Addison G. Hanan's estate or others. No authority was cited for our consideration, and we are not able to find any, which holds that a compromise of a lawsuit presupposes that the suit was wrongfully prosecuted or that the defendant therein was not justly liable for the amount which he agreed in the compromise to pay.

The death of decedent shortly before the hearing may have left his case without the benefit of his own evidence, but we must try the case on the evidence produced and can not try it on what, under other circumstances, the evidence might have been. Notwithstanding the death of decedent, it is not supposed that evidence might not have been produced showing the pleadings in the lawsuit compromised, the whole of the contract of partnership, the statement of account which petitioner caused to be made of the partnership affairs after the death of his partner, the books of account of the partnership and the true amount therein shown to be due, the negotiations between petitioner and the personal representatives of the deceased partner before the lawsuit was begun, showing why it was begun, and those negotiations thereafter leading to the compromise. None of these things were shown. We are asked to surmise, which we may not do.

From the evidence before us and the permissible deductions therefrom it appears that petitioner at the death of his brother, his partner, had left in his hands a large estate belonging to the brother; he paid to his brother's executors $1,097,918.10 under claim that it covered the full amount due; later he paid a further amount of $105,655.90, which he claimed was an overpayment; still later (and within the taxable year) he paid $200,000; and after suit was brought against him he agreed to pay a further sum of $594,344.10 ($900,000 less $105,655.90 and $200,000). Having personally agreed to pay these amounts, the presumption would follow, nothing else appearing, that they were in truth due and owing. Certainly it is not shown that at the time of the payment of $200,000 petitioner did not then have in his hands assets of the old partnership belonging to his former partner's estate of that value. Cf. *Arthur F. Thurnauer*, 30 B. T. A. 1023; *Dorcas G. Rehtz*, 26 B. T. A. 807.

The evidence, therefore, shows no *expense* or *loss* to petitioner and leaves the determination of the respondent undisturbed. Under the clear import and meaning of the statute involved, we consider further discussion of cases cited by petitioner's counsel unnecessary.

*Judgment will be entered for the respondent.*