**UNITED STATES of America, Appellant and Cross-Appellee,**

v.

**ATLANTIC COAST LINE RAILROAD COMPANY, Appellee and Cross-Appellant, and Mary Lou Mintz, Appellee.**

**No. 7212.**

United States Court of Appeals Fourth Circuit.

Argued June 19, 1956.

Decided Sept. 22, 1956.

---

Marcus A. Rowden, Atty., Dept. of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Julian T. Gaskill, U. S. Atty., Goldsboro, N. C., and Melvin Richter, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellant and cross-appellee.

L. J. Poisson, Jr., and M. V. Barnhill, Jr., Wilmington, N. C. (Poisson, Campbell & Marshall, Wilmington, N. C., on the brief), for appellee and cross-appellant.

Before PARKER, Chief Judge, PRETTYMAN, Circuit Judge, and TIMMERMAN, District Judge.

PARKER, Chief Judge.

These are cross appeals in an action brought by the United States to enforce a claim under section 12(o) of the Railroad Unemployment Insurance Act, 45 U.S.C.A. § 362(o). One Mary Lou Mintz, an employee of the Atlantic Coast Line Railroad Company, sustained injuries while in the service of the company. Pursuant to the provisions of the act she was paid the sum of $1105 by the Railroad Retirement Board on account of physical disability resulting from such injuries. She subsequently instituted suit against the railroad to recover damages on account of the injuries; and notice was duly given the railroad of the Board's claim to reimbursement under the act and of the duty of the railroad to withhold payment in protection of such claim. Thereafter she recovered judgment in the sum of $41,340, which the railroad paid into court without notice to the court of the Board's claim under the statute and without taking any steps to protect the Board's interest. This action was thereupon instituted in behalf of the United States against the railroad to recover the amount of its claim and Miss Mintz was impleaded by the railroad as a third party defendant, whereupon the complaint of the United States was amended to ask judgment against her, as well as against the railroad. The court entered judgment against Miss Mintz and the railroad, jointly and severally, for the amount of the claim but, upon a holding that Miss Mintz was primarily liable, provided that the judgment should be enforced against the railroad only in the event collection could not be enforced against her. The railroad has appealed from the judgment. The United States has appealed from the requirement that the judgment be enforced against the railroad only in the event that it cannot be collected from Miss Mintz. She has not appealed.

■■ There can be no question but that judgment was properly entered against the railroad, as well as against Miss Mintz, for the amount of the claim. The statute provides:

"(o) Benefits payable to an employee with respect to days of sickness shall be payable regardless of the liability of any person to pay damages for such infirmity. The Board shall be entitled to reimbursement from any sum or damages paid or payable to such employee or other person through suit, compromise, settlement, judgment, or otherwise on account of any liability (other than a liability under a health, sickness, accident, or similar insurance policy) based upon such infirmity, to the extent that it will have paid or will pay benefits for days of sickness resulting from such infirmity. Upon notice to the person against whom such right or claim exists or is asserted, the Board shall have a lien upon such right or claim, any judgment obtained thereunder, and any sum or damages paid under such right or claim, to the extent of the amount to which the Board is entitled by way of reimbursement."

The Board had a right under the statute to reimbursement for the amount paid Miss Mintz from any sum or sums payable to her on account of her injuries. When notice was given the railroad of the Board's claim, a lien was created by express provision of the statute upon her claim against the railroad and the judgment obtained thereunder. The effect of the notice, as we held with respect to notice under the tax lien statute, was to create a "statutory attachment and garnishment in which the service of notice provided by statute takes the place of the court process in the ordinary garnishment proceeding." United States v. Eiland, 4 Cir., 223 F.2d 118, 121. When the railroad paid in full the judgment obtained by Miss Mintz without taking steps to protect the Board's claim of which it had notice, it became liable, just as a garnishee would be liable who made payment to the debtor in disregard of garnishment proceedings. See 5 Am.Jur. pp. 15–16. Directly in point in sustaining the liability of the railroad here are the decisions in United States v. Luquire Funeral Chapel, 5 Cir., 199 F.2d 429, and United States v. Hall, D.C., 116 F.Supp. 47.

The railroad contends that because North Carolina General Statutes, § 1–239 authorizes a party against whom a judgment is rendered to pay the whole or any part thereof to the clerk, it was absolved by such payment from further liability on account of the Board's claim. The answer is that the judgment was by federal statute made subject to a lien in favor of the Board for the amount of its claim and the railroad had knowledge of this lien. It could have protected itself by making payment into court subject to the lien and with timely notice to the Board to intervene and protect its rights, see N.C. General Statutes, § 1–73, Walker v. Miller, 139 N.C. 448, 52 S.E. 125, 1 L.R.A.,N.S., 157, or by making payment into court of the balance due Miss Mintz with notice that it was holding the amount of the Board's claim for payment to the Board pursuant to the statutory notice which it had received.

There is nothing in the state statute authorizing payment to the clerk which justified the railroad in ignoring the lien on the judgment created by the federal statute, which is the controlling law in the premises. If there is any conflict between its provisions and that of the state statute, the latter must yield. As was well said by the learned judge below, D.C., 135 F.Supp. 600, 605:

"* * * the Railroad or other tort-feasor to whom notice has been given as required by the Act owes a duty to protect, by reasonable means, the Board's lien on the claim, judgment or the proceeds therefrom. If the claim is settled, either out of court or by consent judgment, reasonable protection of the Board's lien certainly means withholding the amount due the Board or making other satisfactory arrangements to have the Board's lien paid in the course of settlement.

"If the claim is contested and final judgment is rendered on the verdict against the Railroad or other tort-feasor, reasonable protection of the lien would seem to require notice thereof to the Clerk to whom the money is paid, at or before the time of payment, or in the alternative, notice to the Board, prior to payment of the judgment, in sufficient time for the Board to file a motion in the cause or otherwise intervene to protect its lien on the money in the hands of the Clerk."

Coming to the government's appeal, we think it entirely without substance. As the judgment can, by its terms, be enforced against the railroad if not collected from Miss Mintz, the government's appeal presents, at best, nothing more than a barren technicality; and we think that even this technicality is entirely lacking in merit. Since reimbursement under the statute must be made from the damages paid or payable to the employee, and since Miss Mintz has received the full amount of the damages, she should make the payment. Only if collection cannot be made from her,

should the railroad be called upon to pay again the damages which it has already paid. Equitable principles should be applied in enforcing this statute, which in effect creates equitable liens and assignments, just as such principles are applied in cases arising under the bankruptcy act. The government, in its brief, admits that the railroad, if required to pay the judgment, is entitled to the benefit of the equity of subrogation, by way of judgment over against Miss Mintz. We see no reason why, under the circumstances here, it is not entitled also to have the equitable principles of exoneration applied in its behalf in advance of payment. Glades County, Fla. v. Detroit Fidelity & Surety Co., 5 Cir., 57 F.2d 449, 451–452; Dobie v. Fidelity & Casualty Co. of New York, 95 Wis. 540, 70 N.W. 482, 60 Am.St.Rep. 135; Pomeroy's Equitable Remedies sec. 919. Where one of two persons liable for a debt has received funds from which the debt should be paid, the other is equitably entitled to have collection made, if possible, from the one who has received the funds. His rights in equity are not to be distinguished from those of a surety for a debt secured by pledge of collateral, as to which see 50 Am.Jur. p. 1072; A.L.I. Restatement Security p. 357, illustration 2. Whether the equity of the railroad should be worked out by way of subrogation, with recovery over upon payment, or by way of exoneration, with judgment against both parties and with direction that it be enforced first against the party primarily liable, was a matter resting in the sound discretion of the District Judge. Under the circumstances of the case, we think that discretion was properly exercised here, where Miss Mintz had received the fund from which the claim of the Board was payable and presumably had it in hand at the time.

Affirmed.

TIMMERMAN, District Judge (dissenting).

I dissent and state my reasons therefor as follows: The fallacy in Judge Park-

er's opinion lies in the assumption that the railroad owed the Board an affirmative duty to take action to enforce the Board's lien for the Board. In his statement of the facts, Judge Parker states:

"* * * and notice was duly given the railroad of the Board's claim to reimbursement under the act *and of the duty of the railroad to withhold payment in protection of such claim.*" (Emphasis added.)

The statute in question, quoted by Judge Parker, does not impose such a duty, and no such duty existed at common law. In this connection, it is important to bear in mind that the railroad is not charged with having negligently or intentionally destroyed the Board's lien. It is charged with having *failed* to take *affirmative* action on the Board's behalf to enforce the Board's lien.

It is amazing how little effort the Board exerted in its own behalf to protect its own interests. It wrote the railroad a letter in 1948 and another in 1951. It did nothing else. In its 1948 letter, its indifference was displayed in a remarkable way. It said:

"If you want to know before making a payment or a settlement, how much has been paid for sickness benefits, such information will be furnished."

How generous of the Board! How kind it was to offer to supply such information "If you want to know * * *"!

In response to its 1951 letter, the Board was informed by the railroad that Miss Mintz's case had been tried, had resulted in a verdict in favor of Miss Mintz, and was being appealed. Still, the Board took no further action on its own behalf but was content to delegate its responsibility to the railroad to act for it. A reversal and a new trial followed, the new trial resulting in a verdict in favor of Miss Mintz. A second appeal was taken, and the judgment was affirmed. Thereafter, the railroad paid the amount of the judgment to the clerk

of the State Court, and as an afterthought, sent a telegram to the Board informing it of such action. At this point, some official of the Board woke up to what was going on and telephoned the clerk of the State Court, informing him of the Board's lien and requesting him to withhold payment of the judgment until the Board had time to protect its interests. The clerk did not feel at liberty to comply with this request, however, and paid the entire amount over to Miss Mintz's attorneys.

But the point that needs to be emphasized is that no matter how considerate the railroad was to the Board, it was all gratuitous, because the railroad was not required by the statute to look after the Board's affairs.

The result reached by a majority of this Court can have serious consequences. A railroad is not only shackled with the Board's job but it is made an involuntary judge of the merits of claims asserted by the Board. If it decides that a claim asserted by the Board has merit and pays the claim out of funds due an employee, it may later turn out that the Board's claim was invalid, and the railroad will have to pay twice. On the other hand, if a railroad decides that a claim asserted by the board is lacking in merit and pays the entire fund to the employee, it may happen that the Board's claim was a valid one, and the railroad will have to pay twice. The only way that a railroad can protect itself is to bring an interpleader suit to settle the question. In any event, the railroad's predicament is not a pleasant one.

How much more orderly it would be for the Board to look after its own affairs! If it could not obtain a written assignment from the employee, it could intervene in an action in which it claimed an interest. Its rights would be protected by the Court, and the railroad would not be confronted with the possibility of multiple liability.

The decision which this Court is rendering cannot be justified by the statute as Congress enacted it. Something which is not there and which Congress did not intend to be there must be read into it. When that is done, the Court makes itself a legislative body and usurps power that the people denied it in the Constitution.

I do not agree that United States v. Eiland, 4 Cir., 223 F.2d 118, is in point. In that case, the Court was dealing with the effect of a levy, authorized by law, to satisfy a statutory lien covering the very property levied on. In the instant case, we have a statutory lien but no authorized levy. It is assumed in the majority opinion that notice given of the existence of a lien on property is the equivalent to a levy to satisfy the lien thereon. There is nothing in the statute to warrant such an assumption; nor is there any analogy between notice of a lien and a garnishment which in legal effect is no more than a warning to a person holding another's property not to deliver it to the other but to account for it in court. I do not agree either that United States v. Luquire Funeral Chapel, 5 Cir., 199 F.2d 429, and United States v. Hall, D.C., 116 F.Supp. 47, are in point, for in each of these cases, the defendant had compromised and settled the employee's claim thereby defeating the Board's lien.

Even if I agreed with the other members of this Court that "When the railroad paid in full the judgment obtained by Miss Mintz without taking steps to protect the Board's claim of which it had notice, it became liable, * * *" it would follow as a matter of logic that I could not also agree with their second view that the government's appeal is "entirely without substance."