BROTHERHOOD OF RAILROAD SIGNALMEN, Plaintiff-Appellee,

v.

LOUISVILLE & NASHVILLE RAIL-ROAD COMPANY, a Corporation, Defendant-Appellant.

No. 81–1697.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 12, 1982.

Decided Sept. 16, 1982.

responsibilities, has been added.

James C. Cook, Walker & Williams, P. C., Belleville, Ill., for defendant-appellant.

Clinton J. Miller, Highsaw & MaHoney, P. C., Joseph Guerriere, Jr., Washington, D. C., for plaintiff-appellee.

Before WOOD and POSNER, Circuit Judges, and WILL,* Senior District Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

The Louisville & Nashville Railroad Company (the "Railroad") appeals from the United States District Court for the Southern District of Illinois. The district court entered summary judgment, enforcing an award of Public Law Board No. 1998 (the "Board"), in favor of the Brotherhood of Railroad Signalmen (the "Brotherhood"), on

---

* The Honorable Hubert L. Will, Senior District Judge of the Northern District of Illinois, is sitting by designation.

behalf of railroad employee George L. Choate. After examining the briefs and reviewing the record, and based upon the oral argument before this court, we conclude that the district court, in entering its order, properly analyzed the issues raised in this appeal. Therefore, we affirm the district court's order and judgment and hereby adopt its opinion entered on April 22, 1981, attached hereto as an appendix. Moreover, we add the following comments, relating in particular to the district court's conclusions of law 543–544.

At the outset, we recognize, as did the district court, that the scope of judicial review in proceedings to enforce an award of the Public Law Board is among the narrowest in the law. *Diamond v. Terminal Railway Alabama State Docks,* 421 F.2d 228, 233 (5th Cir. 1970); *see also Union Pacific Railroad Co. v. Sheehan,* 439 U.S. 89, 93, 99 S.Ct. 399, 401, 58 L.Ed.2d 354 (1978) (narrow scope of review applies to both questions of fact and questions of law). The Board's order may be set aside only if the Board failed to comply with the requirements of the Railway Labor Act, failed to confine the order or itself to matters properly within the scope of its jurisdiction, or for fraud or corruption by a member of the division making the order. 45 U.S.C. § 153, First (p).

We find it anomalous that an employee can claim to be permanently and totally disabled, obtain a certification to that effect, and collect sickness and disability payments, and, at the same time, seek to force his employer to reinstate him to his former position with back pay for time lost. *Cf. Hodges v. Atlantic Coast Line Railroad Co.,* 363 F.2d 534, 539 (5th Cir. 1966) (court "strongly disapprove[d]" of practice which permitted employee to sue employer claiming permanent and total disability and at same time force employer to reinstate him to former position with back pay for time lost). Moreover, both the Public Law Board Award, as well as the district court's opinion, are somewhat uncertain in that neither specifies what constitutes "time lost." *See, e.g., Monaghan v. Central Vermont Railway, Inc.,* 404 F.Supp. 683 (D.Mass.1975); *Brotherhood of Railroad Signalmen v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.,* 284 F.Supp. 401 (N.D.Ill.1968). Nonetheless, we recognize that in light of the issues raised by the parties in the district court and the narrow scope of review under the Railway Labor Act, the district court was limited in what it could do. *See, e.g., Denver & R.G.W. Ry. Co. v. Blackett,* 538 F.2d 291, 294 (10th Cir. 1976) (district court had no power to allow set-off where Board had not provided for such allowance); *cf. United States v. Atlantic Coast Line Railroad,* 237 F.2d 137 (4th Cir. 1956) (whether equity of the railroad should be worked out by subrogation or by way of exoneration was a matter resting in the sound discretion of district judge).

The Railroad relies on *Sweeney v. Florida E.C. Ry. Co.,* 389 F.2d 113 (5th Cir. 1968), to support its contention that the district court had the authority to reduce the award by the amount Choate received during the period he was discharged. In *Sweeney,* the employee, for several years prior to his dismissal from the Florida East Coast Railway Co. ("FEC"), divided his working year, spending five months with the Baltimore & Ohio Railroad ("B & O") and the balance of the year with the FEC. When Sweeney was discharged by the FEC, he went to work for the B & O. The Board sustained Sweeney's wrongful dismissal claim, awarding him compensation for time lost, but the carrier did not pay. In the enforcement action which followed, the district court dismissed the action, holding that the dispute over whether the Board intended that the award be one of gross or net wages lost during the period must be resolved by the parties requesting the Board to interpret the award.

On appeal, the Fifth Circuit noted first that if the Board had intended the amount paid for "time lost" to be diminished by outside wages, it would have specified that in the award. Therefore, the court found

that "Sweeney was entitled to the total amount of his 'time lost', without deductions . . . for *other compensation received by him through his efforts to diminish or minimize the damages suffered by reason of his dismissal.*" *Id.* at 116 (emphasis added). In view of the fact, however, that Sweeney had routinely worked for the B & O from June through October of each year and that his work during that period was "through his choice and not on account of his dismissal," the Fifth Circuit diminished the award by the amount Sweeney earned for those five months at the B & O. *Id.* at 116–17.

■ *Sweeney* is, in fact, quite consistent with the district court's decision in this case. Like the court in *Sweeney*, we must assume that if the Board wanted the amount paid Choate reduced by his sickness benefits and disability annuity, it would have said so in the award. Moreover, unlike *Sweeney*, Choate received the payments not "through his choice," but "on account of his dismissal." Thus, the district court properly enforced the award which gave Choate his "time lost," without deducting "other compensation received by him through his efforts to diminish or minimize the damages suffered by reason of his dismissal."

■ Finally, as the Brotherhood conceded and the district court recognized, "Choate may ultimately be responsible for reimbursement to the Railroad Retirement Board at some point in the future." After the Railroad complies with the terms of the award, the Retirement Board will have the option of seeking recovery from Choate for the sums it has paid him over the years. 45 U.S.C. §§ 231i(a), 362(*o*). Upon proper notice, the Retirement Board "shall have a lien" upon the judgment "to the extent of the amount [it] is entitled by way of reimbursement." 45 U.S.C. § 362(*o*); *Atlantic Coast Line Railroad Co.,* 237 F.2d at 140; *United States v. Luquire Funeral Chapel,* 199 F.2d 429 (5th Cir. 1952).

The order of the district court is affirmed.

## APPENDIX

### IN THE UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BROTHERHOOD OF RAILROAD SIGNALMEN, <br>      *Petitioner,* <br>   -vs- <br> LOUISVILLE AND NASHVILLE RAILROAD COMPANY, <br>      *Respondent.* | No. 80 5224 |

Before the Court are the motions of petitioner Brotherhood of Railroad Signalmen (BRS) and of respondent Louisville and Nashville Railroad Company (L&N) for summary judgment. The instant action was brought pursuant to 45 U.S.C. Section 153, First (p) and Section 153, second, as a petition to enforce Award No. 1, Case No. 1 of Public Law Board No. 1998, dated January 24, 1978, sustaining the claim of the BRS against respondent L&N. Both parties presented oral arguments on their motions and stipulated in open court that the Court should render judgment on the record without submission of the case to a jury.

### FINDINGS OF FACT

1. Petitioner Brotherhood of Railroad Signalmen (hereinafter referred to as "BRS") is the duly authorized representative for the purpose of the Railway Labor Act (45 U.S.C. Section 151 *et seq.*) of the employees of the respondent Louisville and Nashville Railroad Company (hereinafter referred to as "L&N") in the positions of Signal Tester, Foreman, Assistant Foreman, Signal Technician, Leading Signalman, Leading Signal Maintainer, Assistant Signal Maintainer and Signal Helper and is a party to collective-bargaining agreements executed pursuant to that statute governing rates of pay, rules and working conditions of those employees. The BRS main office is located at 601 West Golf Road in Mount Prospect, Illinois. (*See* Complaint of BRS at paragraph 4, Answer of L&N at paragraph 2.)

2. Respondent L&N is a Kentucky corporation engaged in interstate transportation by rail pursuant to the provisions of the Interstate Commerce Act, 49 U.S.C. Section 1 *et seq.* and is subject to the provisions of the Railway Labor Act, 45 U.S.C. Section 151 *et seq.* Respondent maintains its main offices at 908 West Broadway, Louisville, Kentucky, and operates through the Southern District of Illinois. (*See* Complaint of BRS at paragraph 5; Answer of L&N at paragraph 2.)

3. BRS and the L&N are parties to a collective-bargaining agreement with an effective date of February 16, 1949, and parties to several successive supplemental and memorandum agreements. BRS and the L&N are also parties to an agreement dated July 14, 1977, which established Public Law Board No. 1998 pursuant to Section 3, Second of the Railway Labor Act (45 U.S.C. Section 153, Second) to hear and determine disputes between said parties in accordance with the provisions of that Section. This Agreement specified that the Board should have jurisdiction over disputes between the parties listed in Attachment A of the Agreement. A dispute between the parties arising out of the railroad's dismissal from employment of Mr. G. L. Choate, identified as "Dismissal of Mr. G. L. Choate, Signal Tester Helper, following investigation held on July 16, 1976, Carrier file Nos. D–106–67, G–306–20, G–226–18. Organization Case No. 4921" is such a dispute listed in such Attachment A. (A true and correct copy of the July 14, 1977 Agreement and Attachment A thereto is attached to the Complaint of BRS as Exhibit B.) (*See* Complaint of BRS at paragraph 6; Answer of L&N at paragraph 2.)

4. G. L. Choate has been employed by respondent L&N for thirty-four years. He began service as a signal helper with the L&N on April 9, 1945, established seniority as an assistant signalman on March 24, 1948, and established seniority as a signalman on April 11, 1949. (*See* Complaint of BRS at paragraph 7; Answer of L&N at paragraph 2.)

5. Prior to July 16, 1976, Mr. Choate was working on the L&N as a System Signal Tester Helper. He had been previously diagnosed as suffering from Meniere's Syndrome, an ear disorder which affects his sense of balance and which makes it impossible for him to hold any position that entails pole climbing or any other duty that requires balancing. (*See* Complaint of BRS at paragraph 7); Answer of L&N at paragraph 2; Deposition of George L. Choate, December 29, 1980, at P. 29 (hereinafter referred to as "Tr. 29.")

6. In addition to the regular rate of pay for the position of Signal System Tester Helper provided for in the BRS–L&N collective-bargaining agreement, Appendix DD of the Memorandum of Agreement between BRS and L&N of September 6, 1974, provided for the payment of $3.10 per day as a travel allowance to employees in the Signal Department occupying certain positions, of which Mr. Choate's was one. This $3.10 per day was intended to be a flat rate reimbursement for employees off-the-job expenses, and was in addition to any other authorized expenses for lodging, meals or equipment necessary to perform the required tasks. (Tr. 16–18).

7. On July 16, 1976, the L&N held two consecutive discipline investigation hearings into its charges that Mr. Choate failed or refused to protect his assignment on June 21, 22, 29 and 30, 1979, and was absent from duty without proper authority on those days. The investigations were conducted by H. L. Hood, the L&N's Signal Engineer, Maintenance and Construction. (*See* Complaint of BRS at paragraph 10; Answer of L&N at paragraph 5; Tr. 23–24.)

8. By letter dated August 10, 1976, H. L. Hood notified Mr. Choate that he had been found guilty of the charges brought against him, and that the penalty to be assessed was dismissal from service. (*See* Complaint of BRS at paragraph 10; Answer of L&N at paragraph 5; Tr. 24.)

9. Pursuant to the application provisions of the collective-bargaining agreement and Section 3, First (i) of the Railway Labor Act (45 U.S.C. Section 151, First (i)) Mr.

R.B. Flowers, the BRS representative acting on behalf of Mr. Choate, appealed the decision of H.L. Hood up to and including the highest officer of the L&N designated to entertain and act upon such appeals, Mr. W.C. Moore, the L&N Assistant Vice President-Personnel and Labor Relations. In its appeals of the decision, the BRS contended that Mr. Hood's decision and the subsequent dismissal of Mr. Choate were invalid due to the unfairness of the proceedings as conducted by Mr. Hood. By letter dated October 1, 1976, W.C. Moore denied the appeal. (*See* Complaint of BRS at paragraphs 11 and 12; Answer of L&N at paragraph 5.)

10. Following conferences between representatives of the BRS and the L&N held on November 19, 1976, and December 13, 1976, the L&N offered to restore Mr. Choate to service on a leniency basis, restoring his former seniority but without pay for the time lost due to his dismissal. This offer was conditioned upon Mr. Choate's ability to satisfactorily pass a physical examination. By letter dated January 24, 1977, R.B. Flowers advised the L&N that the BRS refused to accept the offer of Mr. Choate's reinstatement on a leniency basis because Rule 55(a)(3) of the collective-bargaining agreement required that Mr. Choate be reinstated with all rights unimpaired and with pay for all time lost due to the invalidity of the dismissal decision. (*See* Complaint of BRS at paragraph 12; Answer of L&N at paragraph 5.)

11. Rule 55(a)(3) of the BRS–L&N collective-bargaining agreement provides as follows:

> "If the charge or charges against the employee are not sustained, his record shall be cleared of the charge or charges and if suspended or dismissed he shall be reinstated with all rights unimpaired and paid for time lost."

(*See* Complaint of BRS at paragraph 12; Answer of L&N at paragraph 5.)

12. Following the L&N's refusal to change its position with respect to Mr. Choate's dismissal, the BRS presented his claim to Public Law Board No. 1998. (*See* Complaint of BRS at paragraph 13; Answer of L&N at paragraph 5, Tr. 25–26).

13. On January 24, 1978, Neutral Member I.M. Lieberman issued the Award No. 1 of Public Law Board No. 1998. That Award sustained the claim of the BRS on behalf of Mr. G.L. Choate. The Board sustained BRS's allegations of unfairness and impropriety in the hearing officer's conduct of the investigation and hearing in his refusal to allow Mr. Choate to explain his absence or to present evidence in litigation. (*See* Complaint of BRS at paragraph 14–15; Answer of L&N at paragraph 5; Tr. 26–27); Award No. 1, Case No. 1, Pub.L.Bd.No. 1998, a copy of which is attached to the complaint as Appendix A, Exhibit 1, at pp. 3–6 (hereinafter referred to as "Award No. 1".)

14. Award No. 1 included an Order that the L&N comply with the Award, i.e., thirty (30) days from the date of the Award of January 24, 1978. (*See* Complaint of BRS at paragraph 18; Answer of L&N at paragraph 8; Award No. 1 at paragraph 6.)

15. The L&N did not comply with the terms of Award No. 1 by the thirty-first (31) day after it was issued. On that date, February 24, 1978, BRS General Chairman R.B. Flowers requested by letter that the L&N advise BRS when it would honor the provisions of Award No. 1, Case No. 1 of Public Law Board No. 1998. Mr. Flowers' letter reminded the L&N that Rule 55(a)(3) states that:

> "If the charge or charges against an employee are not sustained his record shall be cleared of the charge or charges and if suspended or dismissed he shall be reinstated with all rights unimpaired and paid for time lost."

(*See* Complaint of BRS at paragraph 19; Answer of L&N at paragraph 8.)

16. In a letter dated March 23, 1978, J.P. Powell, the L&N Superintendent-Signals ordered Mr. Choate to report to Signal Tester R.E. Harvill at Dickson, Tennessee, several hundred miles from Mr. Choate's home in Belleville, Illinois, on Tuesday, March 28, 1978. (*See* Complaint of BRS at paragraph 20; Answer of L&N at paragraph 8.)

17. On March 27, 1978, Mr. Choate received a telephone call from Mr. Powell's office informing him that it would be futile for him to make the journey to Dickson, Tennessee because the position for which he was being ordered to report was in reality unavailable to him. Although the telephone call was placed to Mr. Choate by Mr. Flowers, this was done at the request of Mr. Powell and in his presence. (See Tr. 46–47, 57.)

18. Following the L&N's advice that his return to service would be a useless gesture, in that telephone call from Mr. Powell's office, Mr. Choate requested a six month leave of absence pursuant to Rule 36 of the collective-bargaining agreement, on April 1, 1978. That request was granted on April 7, 1978. By letter dated September 30, 1978, Mr. Choate requested a six month extension of his leave of absence, which was granted on October 5, 1978. (See Complaint of BRS at Paragraph 23; Answer of L&N at paragraph 11; Tr. 48.)

19. By letter dated August 30, 1978, BRS requested an interpretation of Award No. 1. In that interpretation, the majority of the Board indicated that its intent in sustaining the claim of G.L. Choate was that the L&N comply fully with the provisions of Rule 55 with respect to Mr. Choate as the remedy in the dispute. In that interpretation, the Board restated that the pertinent provisions of Rule 55 are as follows:

If the charge or charges against an employee are not sustained, his record shall be cleared of the charge or charges and if suspended or dismissal he shall be reinstated with all rights unimpaired and paid for time lost.

(See Interpretation No. 1 of Award No. 1, Case No. 1, a copy of which is attached to the complaint as Appendix C.)

20. On July 16, 1976, the date of the initial hearings which ultimately resulted in his dismissal from service, Mr. Choate was physically qualified to perform the job of System Signal Tester Helper on the L&N. Although he was suffering from Meniere's Syndrome at the time, that only prevented him from performing jobs that involved climbing poles. However, the System Signal Tester Helper position required no pole climbing, and merely required the occupant of the position to accompany the tester to the locations of the signals, to transcribe the tests made by the tester pursuant to the Signal Inspection Act and the requirements of the Federal Railroad Administration, and to forward the results of those tests to the appropriate management personnel. (See Tr. 12–13, 29, 55.)

21. Mr. Choate's fitness to return to the System Signal Tester Helper position to which he was entitled under Award No. 1 and Rule 55 of the collective-bargaining agreement was certified by Dr. T. O'Brien of Belleville, Illinois, to whom Mr. Choate had been referred by the L&N following Mr. Choate's fall in the parking lot of the motel at which the July 16 investigative hearings took place. (See Tr. 31–32, 57.)

22. Mr. Choate has been receiving Occupational Disability and Annuity payments from the Railroad Retirement Board since 1978. He is suffering from Meniere's Syndrome. He has, however, been found by L&N's physician to be fit to return to his position as a System Signal Helper Position of which only six positions were available on the L&N system. (See Tr. 34, 36–37, 42, 43.)

23. Mr. Choate has not held any other employment since his dismissal from the L&N following the July 16, 1976 hearings, although he has contacted numerous other carriers for the purpose of seeking employment. (See Tr. 44–46.)

24. Mr. Choate is not totally disabled at this time. His disability has always been, and continues to be, only with relation to the jobs in the Signal Department as to which he has seniority rights, but which involve climbing poles or performing other similar tasks. (See Tr. 43.)

25. As of December 29, 1980, Mr. Choate considered himself to be physically qualified to perform the job of System Signal Tester Helper on the L&N. (See Tr. 59.)

26. The L&N has not complied with Award No. 1 by restoring Mr. Choate to a

position, with pay for time lost and a restoration of all rights unimpaired. (*See* Tr. 60.)

27. Under Section 3 of the Railway Labor Act, a United States District Court is empowered to enforce awards of divisions of the National Railroad Adjustment Board, or a Special Adjustment Board (Public Law Board.) Such Awards may be set aside only in three (3) very limited circumstances, specifically enunciated in the Railway Labor Act:

Failure of the division to comply with the provisions of this chapter, for failure of the order to conform or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order. 45 U.S.C. Section 153, First (p).

(*See* Complaint of BRS at paragraph 27; Answer of L&N at paragraph 25.)

28. It is also admitted that Public Law Board No. 1998 has complied with all of the relevant provisions of the statutory chapter referred to in Section 3, First (p) of the Railway Labor Act. (*See* Complaint of BRS at paragraph 28; Answer of L&N at paragraph 15.)

29. It is also admitted that Public Law Board No. 1998 in Award No. 1, Case No. 1, confined itself to matters within its jurisdiction by disposing of certain claims and grievances as listed in Appendix A of the July 14, 1977, agreement. (*See* Complaint of BRS at paragraph 29; Answer of L&N at paragraph 15.)

30. It is admitted that there existed no fraud or corruption by any member of the Board making the Order. (*See* Complaint of BRS at paragraph 30; Answer of L&N at paragraph 15.)

## CONCLUSIONS OF LAW

1. Section 3, First (p) and Section 3, Second of the Railway Labor Act (45 U.S.C. Section 153, First (p) and Second) require that this Court enforce the awards of Public Law Boards unless the Board has failed to comply with the requirements of that Act, the Board has exceeded the scope of its jurisdiction, or there has been some fraud or corruption on the part of members of the Board. This Court may set aside Award No. 1 of Public Law Board No. 1998, then, only if one of those three statutory factors is presented.

2. Courts construing these enforcement provisions have repeatedly emphasized the strict limitations on the review powers of the district courts. The United States Court of Appeals for the Fifth Circuit has concluded that the scope of review by Federal District Courts in proceedings to enforce an award of a Public Law Board is among the narrowest in the law. *Diamond v. Terminal Railway Alabama State Docks*, 421 F.2d 228 (5th Cir. 1970.)

3. The United States Supreme Court has recently emphasized that this extremely narrow scope of review applies to both questions of fact and questions of law, in *Union Pacific Railroad Co. v. Sheehan*, 439 U.S. 89, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978), where the Court stated as follows:

"Characterizing the issue presented as one of law, as the Court of Appeals seemed to do here, does not alter the availability or scope of judicial review: The dispositive question is whether the party's objections to the Adjustment Board's decision fall within any of the three limited categories of review provided for in the Railway Labor Act. Section 153, First (q) unequivocally states that the 'findings and order of the (Adjustment Board) shall be conclusive on the parties' and may be set aside only for the three reasons specified therein. We have time and again emphasized that this statutory language means just what it says. *See, e.g., Gunther v. San Diego & A.E.R. Co.*, 382 U.S. 257, 263 [86 S.Ct. 368, 371, 15 L.Ed.2d 308] (1965) ...'"

*Id.* at 93, 99 S.Ct. at 401.

4. The history of judicial interpretations of dispute resolution, enforcement and review provisions of the Railway Labor Act, is replete with instances of confirmation of the limited role of Courts in the resolution of minor disputes under the Railway Labor Act. *See Andrews v. Louisville and Nash-*

*ville Railroad Co.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972); *Gunther v. San Diego and Arizona Eastern Ry. Co.*, 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965); *Denver and Rio Grande R.R. v. Blackett*, 538 F.2d 291 (10th Cir. 1976).

5. Inasmuch as there is no allegation that Public Law Board No. 1998 has failed to comply with the requirements of the relevant provisions of the Railway Labor Act, 45 U.S.C. Section 151 *et seq*, that the Board has exceeded the scope of its jurisdiction, or that any member of that Board is guilty of fraud or corruption, Award No. 1 of Public Law Board No. 1998 must now be enforced, and the L&N ordered to comply therewith. 45 U.S.C. Section 153, First (p) and Second. *See Sheehan*, 439 U.S. at 93, 99 S.Ct. at 401; *Gunther*, 382 U.S. at 263–264, 86 S.Ct. at 371–372.

6. Courts reviewing questions of an employer's compliance with reinstatement or backpay awards have ruled that such awards require good faith compliance with the terms thereof. *N.L.R.B. v. Interurban Gas Co.*, 354 F.2d 76, 78 (6th Cir. 1965); *Lakeland Bus Lines, Inc. v. N.L.R.B.*, 278 F.2d 888, 892 (3d Cir. 1960). We cannot find that a restoration to seniority status is compliance with Award No. 1. G.L. Choate must be restored to a job and given back pay in order for there to be compliance with the award.

7. The offer of the L&N to reinstate G.L. Choate was a sham offer of reinstatement. Subsequently the L&N attempted to tout that sham as compliance with the terms of a reinstatement plus back pay award. *Brown v. Bridgeport Rolling Mills Company*, 59 L.R.R.M. 2773 (D.C.Conn. 1965).

8. Inasmuch as the L&N has not complied with the terms of Award No. 1 of Public Law Board No. 1998, which was made in compliance with the procedural requirements of the Railway Labor Act, and that there has been no fraud or corruption on the part of any member of the Board, this Court must now order the en-

forcement of Award No. 1 pursuant to 45 U.S.C. Section 153, First (p), and require the L&N to immediately comply in good faith with the terms thereof. *N.L.R.B. v. Interurban Gas Co.*, 354 F.2d 76, 78 (6th Cir. 1965); *Lakeland Bus Lines, Inc. v. N.L.R.B.*, 278 F.2d 888, 892 (3rd Cir. 1960).

9. As a railroad employee, Mr. Choate was eligible to receive sickness benefits and disability payments from the Railroad Retirement Board pursuant to the Railroad Unemployment Insurance Act, 45 U.S.C. Section 351 *et seq*, and the Railroad Retirement Act, 45 U.S.C. Section 231 *et seq*, over the past four and one-half years.

10. The provisions of the Railroad Retirement Act, 45 U.S.C. Section 231 *et seq*, and the Railroad Unemployment Insurance Act, 45 U.S.C. Section 351 *et seq*, further provide a mechanism whereby the RRB may recover sums of money, or a portion thereof, it has paid to Mr. Choate under those respective statutes. Thus, any repayment made to the RRB must be accomplished in accordance with 45 U.S.C. Section 231i(a) and 45 U.S.C. Section 362(*o*).

11. Although Mr. Choate may ultimately be responsible for reimbursement to the RRB at some point in the future, the L&N's assertion as an affirmative defense to this action that Mr. Choate has suffered no time lost due to his receipt of benefits from the RRB, is, in fact, irrelevant to the instant proceeding. Upon the L&N's compliance with the terms of Award No. 1 by paying him for time lost as a result of his wrongful dismissal from service, the RRB and not the carrier, will have the option of seeking recovery from Mr. Choate for the sums paid to him under the respective statutes. The L&N is not entitled to a "set-off" in the back wages award for the amounts thus paid. *United States v. Atlantic Coast Line RR Co.*, 237 F.2d 137 (4th Cir. 1956).

12. In view of the above-cited provisions allowing recovery of funds by the RRB and which make no provision for a "set-off" by the carrier, and of the award enforcement provisions of Section 3, First (p) and Second, the L&N must now be ordered to

comply with the terms of Award No. 1 by restoring Mr. Choate to his former position, with all rights and benefits unimpaired and paid for time lost under Rule 55 of the BRS—L&N collective-bargaining agreement.

Accordingly, it is hereby ordered that L&N comply with Award No. 1, Case No. 1 of Public Law Board No. 1998 as stated above and plaintiff's motion for summary judgment is hereby granted.

IT IS SO ORDERED.

DATED: This 22 day of April, A.D. 1981.

/s/ W. L. BEATTY
UNITED STATES DISTRICT JUDGE

NOTE: CLERK TO SEND COPIES TO ALL PARTIES.

WILL, Senior District Judge, concurring.

I join in the affirmance of the district court's order on the ground that the defendant-appellant, Louisville and Nashville Railroad Company (L&N), has presented no ground on which either the district court or we may properly set aside the special adjustment board's finding that the claim of the Brotherhood of Railroad Signalmen (BRS) on behalf of G.L. Choate (Choate), one of its members, was sustained. Nor does Judge Posner in his opinion suggest that the L&N has done so.

The only ground suggested as a basis for remanding the case to the district court with instructions to remand it to the adjustment board for a second interpretation of its award (L&N having previously requested and received an interpretation), is that the first interpretation is ambiguous as to whether or not the amount to be paid Choate by the L&N should be reduced by any amounts which he received from the Railroad Retirement Board (RRB) as disability payments during the period covered by the award. Although the first interpretation is not a model of clarity, upon a careful reading of the record, I find little or no ambiguity.

The special adjustment board has twice stated that the BRS claim of improper dismissal was sustained. That claim sought relief under Rule 55 of the collective bargaining agreement between the parties which provides in pertinent part, "if the charge or charges against an employee are not sustained [as here], his record shall be cleared of the charge or charges and if suspended or dismissed he shall be reinstated with all rights unimpaired and paid for time lost."

The board, in its interpretation, stated that "this Board intended that Carrier comply fully with the provisions of Rule 55 with respect to Claimant as the remedy in this dispute."

It seems clear to me that the special adjustment board found that Choate had been improperly dismissed, and that the L&N, under Rule 55, owed Choate reinstatement and compensation from the date of the improper dismissal. That the board so concluded seems obvious from the fact that, although they were advised of Choate's receipt of disability payments during part of the period after his dismissal, they reiterated that his claim of improper dismissal was sustained and that the L&N was obligated to "comply fully with Rule 55."

Since the board knew Choate had received disability payments, it follows that the members did not believe the L&N was entitled to deduct the amount of any such payments or they would have said so. That conclusion is in no way negated by the board's statement that matters of compliance are for the courts to decide. Compliance and interpretation are different though related. The BRS has asked the courts to enforce the special adjustment board's conclusions that Choate was improperly dismissed and is entitled to full compliance with Rule 55. That is what Judge Beatty ordered and what affirmance will finally achieve: compliance by the L&N with the board's order.

As I see it, two bottom line conclusions appear. First, the special adjustment board found that under Rule 55, the L&N, having improperly dismissed Choate, is not entitled to have its obligations under the collective bargaining agreement reduced because

Choate may have received disability payments, unemployment compensation or other income during the period of his improper discharge. Second, if Choate improperly received disability payments from the RRB, as seems likely, there is a mechanism for the recovery of such amounts by the RRB but not by the L&N. Under the circumstances, I see no reason to remand this already over-extended case to the district court with instructions that it remand it back to the special adjustment board for yet another interpretation. Accordingly, for the reasons set forth in Judge Wood's and Judge Beatty's opinions, as well as those set forth herein, I join in the affirmance of the district court's order.

POSNER, Circuit Judge, dissenting.

By our decision today we allow a federal district court to cross the boundary line separating its functions under the minor-dispute provisions of the Railway Labor Act from those of a railroad adjustment board, and to decide a question that is within the board's exclusive competence to decide because it is a question of the meaning of a collective bargaining agreement. The question is whether "time lost" from work by reason of an improper dismissal includes time during which the employee was collecting disability benefits.

Mr. Choate was dismissed by the Louisville and Nashville Railroad allegedly for failing without good cause to report to work. The Brotherhood of Railroad Signalmen prosecuted a grievance on Choate's behalf and a special adjustment board was convened, pursuant to the collective bargaining agreement, to consider the grievance. The board concluded that the company had failed to sustain the charge on which it had based its dismissal of Choate, and the board ordered the railroad to comply with its award which the order describes simply as "claim sustained."

Rule 55 of the collective bargaining agreement states that "if the charge or charges against an employee are not sustained [as the board had found with respect to Choate], his record shall be cleared of the charge or charges and if suspended or dismissed he shall be reinstated with all rights unimpaired and paid for time lost." But a latent ambiguity in the rule as applied to Choate's case, and hence in the board's award, developed when the railroad discovered after the board had issued its order that Choate had applied to the Railroad Retirement Board for disability benefits when he was dismissed, and had been awarded them. The railroad's position was that if Choate was disabled during this period it was not (for him) "time lost" from work within the meaning of rule 55. The railroad therefore asked the special adjustment board to interpret its award, pursuant to section 3 First (m) of the Railway Labor Act, 45 U.S.C. § 153 First (m), which provides that "in case a dispute arises involving an interpretation of the award, the [board] upon request of either party shall interpret the award in light of the dispute."

The board issued an interpretation that did not interpret. It stated that "the major thrust of the [railroad in asking for an interpretation] is with the question of compliance with the Award. Compliance with an Award . . . is not within the jurisdiction of [the board] but rather rests in the Courts. For this reason, which is beyond question, most of the issues raised by [the railroad] cannot be considered by this Board." The board did state—or rather repeated—that its award was "claim sustained," and added unhelpfully: "that statement can be clarified only to the extent provided in the applicable [collective bargaining] agreement." The board then quoted rule 55 and commented: "In its sustained Award it was the intention of this Board that Carrier comply fully with Rule 55 insofar as Claimant is concerned. . . . In summary, therefore, this Board intended that Carrier comply fully with the provisions of Rule 55 with respect to Claimant as the remedy in this dispute."

When the railroad still refused to pay Choate's back wages for the period when he was receiving disability benefits, the Brotherhood brought this suit, asking that the period during which Choate was receiving

disability benefits be included in computing his time lost. The Brotherhood presented evidence to the district court that whatever Choate may have told the Railroad Retirement Board he had not in fact been disabled. The court so found, interpreted the award in the manner urged by the Brotherhood, and ordered the railroad to satisfy the award as so interpreted.

The district court based its decision in favor of the Brotherhood on section 3 First (p) of the Act, which (read together with section 3 Second) provides that the order of a railway adjustment board "may not be set aside except for failure of the [board] to comply with the requirements of this Act, for failure of the order to conform, or confine itself, to matters within the scope of the [board's] jurisdiction, or for fraud or corruption by a member of the [board] making the order." None of these grounds was made out here. But in basing decision on the absence of any statutory ground for setting aside the board's award the district court overlooked the fact that this is not a proceeding to set aside the award but a proceeding to enforce it: a distinction that is not, at least in the circumstances of this case, a merely technical one. The part of the board's order that is in issue simply directs that Choate be "paid for time lost." No sum of money, or formula for computing a sum of money, is specified. I assume that the order is invulnerable to being set aside by a federal court but that does not tell me what number of dollars and cents Choate is entitled to. The board's award simply states, and its "interpretation" merely repeats, that the railroad has to comply fully with rule 55, that is, has to pay Choate for time lost. The board has never explained what "time lost" means, or replied to the railroad's argument that the term was not intended to include the period during which an employee is receiving disability benefits on the basis of his representation that he is disabled from doing railroad work. The board's statement that compliance matters are within the exclusive jurisdiction of the courts, and therefore that "most of the issues raised by the [railroad] cannot be considered by this Board,"

suggests the board may have considered the railroad's argument beyond its competence to address.

So while the district court's decision is in form merely a refusal to set aside the board's order, in substance it is a judicial interpretation of rule 55, a provision of the collective bargaining agreement. Relying on a case that stands for the unrelated proposition that the Railroad Retirement Board would be entitled to recover the disability benefits it had paid Choate if he was awarded back pay for the same period from the railroad, *United States v. Atlantic Coast Line R.R.*, 237 F.2d 137 (4th Cir. 1956), the district court held that the railroad was not entitled to set off those benefits against the back pay due under the award. But set-off is not the railroad's argument. Its argument is that Choate should be estopped by his representations to the Railroad Retirement Board to deny that he was disabled and to get back pay for the period of alleged disability. This argument calls for a construction of rule 55 of the collective bargaining agreement, which is a task for the adjustment board rather than for the district court or this court. The very limited scope of judicial review of board orders reflects, in part at least, a judgment that the board is better at interpreting collective bargaining agreements than the courts are, see, e.g., *Elgin, Joliet & Eastern Ry. v. Burley*, 327 U.S. 661, 664, 66 S.Ct. 721, 722, 90 L.Ed. 928 (1946); and it should make no difference (contrary to what the board may have believed) whether the term to be interpreted appears in a substantive or in a remedial section of the agreement.

If the board's order were clear enough to be enforced, the mere fact that it did not actually specify a sum certain to be paid the employee would not be fatal; the court could properly in such a case make the actual computation. See, e.g., *Sweeney v. Florida East Coast Ry.*, 389 F.2d 113, 115–16 (5th Cir. 1968). But where reduction to a sum certain would require interpreting the collective bargaining agreement, as is true in this case, or otherwise trenching on the area of the board's special competence,

the only thing the district court can properly do is remand the case to the board to carry out its duty under section 3 First (m) to interpret its award. The fact that the board has this express statutory duty is additional evidence that the court was not intended to interpret these awards itself.

I imagine that my brethren agree with my statement of principles and disagree only on the question whether the board's order was unambiguous, but I submit that it is not unambiguous, so that this court's decision, though in form it merely enforces the board's order, in reality interprets the term "time lost" in the collective bargaining agreement; and that is beyond our power to do.

We should instead direct the district court to remand this case to the board for further interpretation—provided, of course, that the district court has the power to remand. The only express such power is conferred in section 3 First (q), which relates to proceedings to challenge, rather than as in this case to enforce, board orders. But there is abundant authority that the court has the power to remand in enforcement proceedings as well. See, e.g., *Transportation-Communication Employees Union v. Union Pac. R.R.*, 385 U.S. 157, 165 n.4, 87 S.Ct. 369, 373 n.4, 17 L.Ed.2d 264 (1966); *Laday v. Chicago, Milwaukee, St. Paul & P.R.R.*, 422 F.2d 1168, 1170 n.2 (7th Cir. 1970). The power can be rationalized by pointing out that when the defendant in an enforcement action complains that the award is ambiguous, he is in effect seeking review under section 3 First (q), thus invoking the district court's power to remand. See *Brotherhood of Railroad Signalmen v. Chicago, Milwaukee, St. Paul & P.R.R.*, 284 F.Supp. 401, 407 (N.D.Ill.1968). There is a problem with this approach: section 3 Second, governing proceedings of special adjustment boards, purports to incorporate only those provisions of section 3 First that relate to "enforcement of compliance," and First (q) as I said is not one of those provisions. But the power to remand in actions to enforce awards of special adjustment boards is too well settled to be seriously questioned at this late date; and it indi-

cates the proper disposition of a case such as this where the award is too ambiguous to enforce and where dispelling the ambiguity requires an interpretation of the collective bargaining agreement, a task within the exclusive jurisdiction of the board. The board failed to interpret the award the first time it was asked to do so; it should be told to try again. Cf. *United Transport. Union v. Southern Pac. Transport Co.*, 529 F.2d 691, 693 (5th Cir. 1976). We are not authorized to do its job for it.