Filed 11/6/14  Cordova v. BNSF Railway CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| RANDALL P. CORDOVA, | |
| Plaintiff and Respondent, | E056223 |
| v. | (Super.Ct.No. BCVBS08535) |
| BNSF RAILWAY COMPANY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Victor R. Stull, Judge.  Affirmed.

Sims Law Firm, Selim Mounedji and John E. Stobart for Defendant and Appellant.

Paul Andrew Burnett for Plaintiff and Respondent.

1

INTRODUCTION

Defendant and appellant BNSF Railway Company (hereafter referred to as BNSF) appeals from an order denying its motion for entry of acknowledgement of full satisfaction of judgment, pursuant to Code of Civil Procedure, section 724.050.[1]  BNSF also contends that the court improperly allowed interest to accrue after it had tendered payment of the judgment.  We will affirm the judgment.

BACKGROUND

Plaintiff and respondent Randall P. Cordova, employed by defendant BNSF as a carman, was injured on the job when an angle cock[2] he was repairing flew off the assembly and struck him in the face.  He filed suit under the Federal Employers' Liability Act (45 U.S.C. § 51 et seq.), alleging several theories under which BNSF could be held liable for negligence.  The trial court granted BNSF's motion for summary judgment.  Cordova appealed.  We found that the trial court properly granted summary adjudication as to one of the theories of negligence Cordova alleged, but we reversed and remanded for further proceedings as to his other theories.  (*Cordova v. BNSF Railway Company*

---

[1]  All further statutory citations refer to the Code of Civil Procedure unless another code is specified.
    We discuss the provisions of section 724.050 below.

[2]  An angle cock is part of an air brake system.

2

(Mar. 16, 2009, E043344) [nonpub. opn.].)  The matter went to trial, and a jury awarded Cordova $583,616, plus costs.[3]  Judgment was entered on December 6, 2011.

After entry of judgment, Cordova obtained a writ of execution seeking $619,566.85, consisting of the amount of the judgment plus costs, interest, and the $25 fee for issuance of the writ.  BNSF filed an ex parte motion to quash the writ.  BNSF contended that it had fully satisfied the judgment or, in the alternative, that it had partially satisfied the judgment and that the writ failed to reflect the correct amount remaining to be paid.  BNSF had tendered to Cordova checks totaling $479,735.92, representing the judgment minus prejudgment advances made to Cordova for which it asserted a lien, liens on the judgment by the Railroad Retirement Board, and federal tax withholdings, which all together totaled $142,865.93.[4]

In that motion, BNSF informed the court that it had sent Cordova a request that he execute an acknowledgement of satisfaction of judgment but that pursuant to section 724.050, it was required to wait 15 days before filing a motion for entry of satisfaction of judgment.  It asked the court to quash the writ or stay execution of it until its motion for entry of satisfaction of judgment could be heard.

In his opposition to the motion to quash the writ, Cordova stated that he had refused to accept BNSF's first check because it was tendered solely as full satisfaction of

---

[3]  The jury found that Cordova suffered $1,061,120 in damages but determined that he was 45 percent at fault.

[4]  There are discrepancies in the amounts of the liens BNSF refers to in various pleadings.  We will assume the amounts listed in BNSF's letter to Cordova's attorney explaining its calculation of the amount required to satisfy the judgment are correct.

3

the judgment but did not actually constitute full payment. He had offered to return the check to BNSF or to destroy it, but its attorney had told him to keep the check "'pending resolution of the remaining issues.'"

At the hearing on the ex parte motion, the court stayed execution of the writ pending a hearing on BNSF's motion for acknowledgment of satisfaction of judgment. The court stated that at that hearing it would address the issue of the offsets and whether BNSF's tender of payment stopped the accrual of interest. The court ordered Cordova to return the checks to BNSF.

BNSF filed its motion for acknowledgment of full satisfaction of judgment under section 724.050. It asserted in the motion that because of the offsets to which it was entitled, the judgment had been satisfied in full. In his opposition to the motion, Cordova repeated that he had refused to accept BNSF's checks because they were tendered solely as full satisfaction of the judgment but did not constitute full payment. He disputed the offsets BNSF unilaterally applied. He also contended that BNSF was seeking to amend the judgment and that the trial court had no jurisdiction to do so. He asserted that BNSF should have sought any offsets it believed were due before entry of the judgment. In his declaration in support of the opposition, Cordova's attorney stated that he had returned BNSF's check as ordered by the trial court.

After hearing the arguments of the parties, the court took the question of satisfaction of judgment and the accrual of interest under submission. It continued to stay execution of the writ pending its decision.

4

On April 13, 2012, the court issued its ruling. The ruling ordered BNSF to pay Cordova "judgment in the amount of $583,616.00, costs in the amount of $34,039.58 and accrued interest . . . from the date of entry of judgment, December 6, 2011, until the date the award is paid." The ruling offered no explanation of the court's reasoning.

BNSF filed a timely notice of appeal.

LEGAL ANALYSIS

1.

THE TRIAL COURT PROPERLY DENIED BNSF'S MOTION FOR ENTRY OF SATISFACTION OF JUDGMENT

*Preliminary Matters*

We will begin our discussion by addressing and rejecting three of Cordova's contentions.

Section 724.050 provides that if a money judgment has been fully satisfied and the judgment debtor has not filed an acknowledgment of satisfaction of judgment with the court and has not complied with the judgment creditor's demand that he do so, "the person making the demand may apply to the court on noticed motion for an order requiring the judgment creditor to comply with the demand. . . . *If the court determines that the judgment has been satisfied* and that the judgment creditor has not complied with the demand, the court shall either (1) order the judgment creditor to comply with the demand or (2) order the court clerk to enter satisfaction of the judgment." (§ 724.050, subd. (d), italics added.) Thus, an essential element of a section 724.050 motion is a

5

showing that the judgment has in fact been satisfied. (*Pierson v. Honda* (1987) 194 Cal.App.3d 1411, 1414 & fn. 4.)

Cordova contends that the court properly denied the section 724.050 motion because BNSF had not even partially satisfied the judgment as of the date of the hearing on the motion. Cordova had returned BNSF's checks before BNSF filed its section 724.050 motion. Accordingly, Cordova contends, the motion necessarily failed because *no* payment, not even of a disputed amount, had been made.

This argument is disingenuous, bordering on frivolous. At the hearing on BNSF's motion to quash the writ, the parties agreed to a further hearing to resolve the dispute as to the sufficiency of BNSF's tendered payment. The parties agreed that BNSF would file and serve its section 724.050 motion and, after hearing the motion, the court would resolve the question of the offsets BNSF asserted and determine whether the payment BNSF had tendered did in fact satisfy the judgment. At that point, Cordova had BNSF's checks in his possession. BNSF offered to allow Cordova to negotiate those checks and stated that it would not attempt to argue that by doing so, Cordova had accepted its tender as full payment of the judgment. Cordova initially agreed to this, but then balked when the court said that in that case, it would quash the writ. Cordova preferred to return the checks and have the court stay execution of the writ. The court agreed to this and ordered Cordova to return the checks to BNSF. However, the parties' agreement to resolve the question of the sufficiency of BNSF's tender of performance to satisfy the judgment remained unchanged: The parties agreed that the tender constituted at least partial payment of the judgment, and that the only issue to be resolved was the application of the

6

offsets.[5]  Having agreed to this procedure, Cordova cannot defeat it simply by returning the checks.

We also reject Cordova's contention that BNSF's motion was in effect an untimely motion to amend the judgment.  BNSF is not seeking to amend the judgment but merely to offset its obligation by amounts which it contends Cordova had agreed to pay in the event of a judgment and by amounts which it asserts it was required by law to pay on Cordova's behalf.  "[T]he right to seek equitable setoff after the entry of judgment has long been recognized by the California courts. . . .  '[I]t is well settled that a court of equity will compel a set-off when mutual demands are held under such circumstances that one of them should be applied against the other and only the balance recovered.'" (*O'Callaghan v. Southern Pac. Co.* (1962) 202 Cal.App.2d 364, 370-371, quoting *Harrison v. Adams* (1942) 20 Cal.2d 646, 648-649.)  A motion to compel acknowledgment of satisfaction of judgment is "an entirely acceptable procedure for balancing" offsets.  (*Wade v. Schrader* (2008) 168 Cal.App.4th 1039, 1048.)

Finally, we reject Cordova's contention that BNSF was required to assert its claim for offsets as an affirmative defense.  Section 431.70, on which Cordova relies, provides in pertinent part:  "Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action

---

[5]  Contrary to BNSF's contention, its unilateral decision to apply offsets which Cordova contested did not constitute a tender of performance sufficient to discharge its obligation.  (Civ. Code, § 1486 [offer of partial performance is of no effect].)  In the absence of a judicial ruling or Cordova's agreement on the offsets BNSF claims, BNSF's tender of less than the full amount of the judgment did not satisfy Code of Civil Procedure section 724.050.

is thereafter commenced by one such person, the other person *may* assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations."  (Italics added.)

"May" is generally permissive while "shall" is generally compulsory, unless a contrary intent appears from the context of a statute.  (*Marshall v. Foote* (1927) 81 Cal.App. 98, 100-103.)  Cordova does not provide any persuasive argument or authority that in using the word "may" in section 431.70, the Legislature actually meant "shall" or "must."  The cases he cites do not so hold.  Rather, both merely state that section 431.70 describes "the procedure to be followed in raising setoff as a defense."  (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 762; see *Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 744.)  We understand this to mean that section 431.70 describes the procedure to be followed *if* a party wishes to raise setoff as a defense.  Any other interpretation would conflict with the authorities discussed above, which hold that a defendant may seek an equitable setoff after entry of judgment.  (See *O'Callaghan v. Southern Pac. Co.*, *supra*, 202 Cal.App.2d at pp. 370-371; *Harrison v. Adams*, *supra*, 20 Cal.2d at pp. 648-649; *Wade v. Schrader*, *supra*, 168 Cal.App.4th at p. 1048.)  Moreover, after discussing section 431.70 and noting that the defendant in that case did raise setoff as a defense, the court in *Fassberg Construction Co. v. Housing Authority of City of Los Angeles*, *supra*, stated, "In our view, there is no particular procedure required to invoke the equitable power of the court to effect a setoff, when appropriate."  (*Id*. at p. 763.)

8

*BNSF's Contentions Fail*

We now turn to BNSF's contentions concerning the offsets.

In its motion, BNSF claimed the following offsets against the judgment:

1.  $112,300 paid to Cordova under BNSF's program of advancing living expenses pending resolution of a claim for injury on the job;

2.  $10,586.53, paid to Cordova under BNSF's supplemental sickness payment benefits program;

3.  $3,892.57 paid by BNSF to satisfy a lien in favor of the Railroad Retirement Board; and

4.  $40,704.06 in Railroad Retirement Tax Act payroll taxes withheld by BNSF from the judgment.[6]

We first address the standard of review. BNSF contends that we review de novo the question "whether BNSF satisfied the judgment by tendering what it owed plaintiff under the judgment less advances and withholdings" because the facts pertaining to the claimed offsets are undisputed. The facts may be undisputed, but the underlying issue is whether BNSF is entitled to the offsets it claims. That determination is a matter of discretion for the trial court: "The right to offset is not absolute and may be restricted when the failure to do so would be inequitable. . . . It follows that the trial court's decision [denying an offset] was one subject to an exercise of its equitable powers, and

---

[6] Some of these amounts differ from the amounts stated in BNSF's letter to Cordova's attorney. (See footnote 4, *ante*.) Because we are affirming the denial of BNSF's motion, the discrepancy is not significant.

that the only issue before us on this appeal is whether that discretion was so abused that it resulted in a manifest miscarriage of justice." (*Wm. R. Clarke Corp. v. Safeco Ins. Co. of America* (2000) 78 Cal.App.4th 355, 358-359.) Accordingly, we will review the judgment to determine whether denial of any of the offsets was an abuse of discretion. However, because a motion pursuant to section 724.050 is an all or nothing proposition— either the judgment was fully satisfied or it was not—in order to reverse the trial court's ruling, we would have to conclude that the court abused its discretion with respect to all of the offsets BNSF claims.[7] Or, stated conversely, if we find that it was not an abuse of discretion to reject even one of the offsets BNSF claimed, we must conclude that the trial court properly denied the motion for entry of acknowledgment of full satisfaction of judgment.

*Living Expense Advances and Supplemental Sickness Benefits*

It is beyond any reasonable dispute that BNSF is entitled to an offset for the $112,350 (or $112,300) in advances it paid to Cordova for living expenses. Cordova signed a receipt for each such advance, and the receipts expressly acknowledged that BNSF would recoup the advances in the event of a judgment in Cordova's favor. Accordingly, it would be an abuse of discretion to deny BNSF an offset for those advances.

---

[7] Section 724.110 provides an identical remedy for a judgment debtor who has partially satisfied a judgment. BNSF's motion did not seek an acknowledgment of partial satisfaction as an alternative to acknowledgment of full satisfaction of the judgment.

10

We cannot say the same concerning the offset for the $10,586.53 in provisional supplemental sickness benefits. The declaration of BNSF's claims manager indicates that those benefits were paid by "Aetna," presumably the insurance company by that name, under a supplemental sickness plan. The excerpt from the plan documents attached as an exhibit to the declaration provides that benefits paid under the plan will be offset against any judgment or settlement for personal injury obtained by the injured worker and provides that Aetna is entitled to deduct those benefit payments "from any payment made in any case involving a claim for loss of wages and in which the employer or a third party may be liable for the injury." Although this provision clearly states that Aetna has a right to reimbursement of the benefits, it does not authorize BNSF to claim an offset on its behalf. There is no evidence that Aetna assigned its claim to BNSF, that BNSF had reimbursed Aetna for the benefits paid to Cordova, or that BNSF was for any other reason entitled to claim the offset. In the absence of such evidence, BNSF's claim necessarily fails. Moreover, the excerpt states that "[t]he benefits and procedures set forth in this booklet apply to disabilities which began on or after January 1, 2010." Cordova was injured in 2002. Accordingly, the evidence is insufficient as a matter of law to support BNSF's claim, and the trial court did not abuse its discretion in finding that BNSF did not meet its burden of proof with respect to the claimed offset for those benefits.

*The Railroad Retirement Board (RRB) Lien*

BNSF contends that it is entitled to an offset for $3,892.57, the amount required to pay a lien in favor of the RRB for sickness benefits paid by the RRB to Cordova. Although BNSF alludes to having paid this lien, it cites no evidence in the record that it did so, and we are not aware of any such evidence. Cordova does not dispute that the RRB has a lien on the judgment which must be satisfied. He argues that BNSF must either demonstrate that it has satisfied the lien or allow him to do so. Otherwise, he contends, he will be subjected to uncertainty as to whether the lien has been or will be satisfied.

Title 45 United States Code section 362(o) provides as follows:

"Benefits payable to an employee with respect to days of sickness shall be payable regardless of the liability of any person to pay damages for such infirmity. The [RRB] shall be entitled to reimbursement from any sum or damages paid or payable to such employee or other person through suit, compromise, settlement, judgment, or otherwise on account of any liability (other than a liability under a health, sickness, accident, or similar insurance policy) based upon such infirmity, to the extent that it will have paid or will pay benefits for days of sickness resulting from such infirmity. Upon notice to the person against whom such right or claim exists or is asserted, the [RRB] shall have a lien upon such right or claim, any judgment obtained thereunder, and any sum or damages paid under such right or claim, to the extent of the amount to which the [RRB] is entitled by way of reimbursement."

12

An injured railroad employee and the employer railroad are jointly and severally liable for payment of the lien created by this statute. (*Keith v. Burlington Northern Railroad Co.* (Mo.Ct.App. 1994) 889 S.W.2d 911, 924-925, discussing *U.S. v. Atlantic Coast Line R.R.* (4th Cir. 1956) 237 F.2d 137, 139.) It would be improper to allow BNSF an offset against the judgment without proof that it had satisfied the lien, because without such proof, Cordova could still be liable for the amount of the lien. Accordingly, the trial court did not abuse its discretion in finding that BNSF was not entitled to credit for the amount owed to the RRB.

*Payroll Taxes*

The Railroad Retirement Tax Act (26 U.S.C. §§ 3201-3233) imposes a dual tax on railroad employers and employees that is used to fund annuities for retired railroad employees. Railroad employers are responsible for withholding the employee's share and are also required to pay both the employer's and employee's portions to the Internal Revenue Service. (*Hance v. Norfolk Southern Railway Co.* (6th Cir. 2009) 571 F.3d 511, 522.) BNSF contends that it was entitled to an offset for $40,704.06, representing the amount of railroad retirement taxes due from it and from Cordova, based on the full amount of the judgment. It contends that because the jury returned a general verdict and did not apportion the judgment between damages for time lost from work and other types of damages, the entire judgment must be deemed compensation for time lost.

Title 45 United States Code section 231, a part of the Railroad Retirement Tax Act, provides in part: "An employee shall be deemed to be paid 'for time lost' the amount he is paid by an employer with respect to an identifiable period of absence from

13

the active service of the employer, including absence on account of personal injury, and the amount he is paid by the employer for loss of earnings resulting from his displacement to a less remunerative position or occupation. *If a payment is made by an employer with respect to a personal injury and includes pay for time lost, the total payment shall be deemed to be paid for time lost unless, at the time of payment, a part of such payment is specifically apportioned to factors other than time lost, in which event only such part of the payment as is not so apportioned shall be deemed to be paid for time lost.*" (45 U.S.C. § 231(h)(2), italics added.)

Here, the jury returned an unapportioned general verdict. According to the declaration of Cordova's attorney, which was attached to his opposition to BNSF's section 724.050 motion, the reason that the verdict was not apportioned between compensation for time lost and other damages was that the trial court acceded to BNSF's request that the jury not be given a special verdict form asking it to apportion the damages. BNSF does not deny that it requested the unapportioned verdict; it merely asserts that Cordova is precluded from mentioning it now because the trial court denied his motion for new trial, which was in part based on his complaints about the verdict form, and Cordova did not appeal. We reject this contention. Cordova is not seeking affirmative relief; he is merely presenting an argument to demonstrate why it was not an abuse of discretion to deny BNSF's motion for an offset based on its withholding of taxes.

We also reject the contention that because the entire judgment is subject to payroll taxes as a matter of law, BNSF is necessarily entitled to an offset for the amount of payroll taxes it was required to withhold. As we have discussed, BNSF's entitlement to the offset is a matter of equity subject to the trial court's exercise of discretion. (*Wm. R. Clarke Corp. v. Safeco Ins. Co. of America*, *supra*, 78 Cal.App.4th at pp. 358-359.) It was not an abuse of discretion to refuse to allow BNSF an offset for payroll taxes when the only reason the judgment was not apportioned between general damages and various types of special damages, including lost past and future earnings, is that BNSF successfully persuaded the court not to require the jury to make that apportionment, over Cordova's objection. BNSF created the problem, and it is not equitable to require Cordova to accept any negative consequences.

Because the trial court did not abuse its discretion in denying BNSF three out of the four offsets it claimed, it follows that BNSF's motion for acknowledgment of full satisfaction of judgment was properly denied.

2.

BNSF'S TENDER OF LESS THAN THE FULL AMOUNT OF THE JUDGMENT

DID NOT STOP THE ACCRUAL OF INTEREST

BNSF contends that the trial court erred when it ordered BNSF to pay interest from the date of entry of the judgment. It contends that the accrual of interest stopped when it tendered what it terms a "valid tender" of payment.

An offer of payment "duly made" stops the running of interest on a judgment or other obligation. (Civ. Code, § 1504.) To be effective, however, the tender must

15

constitute full performance and may not impose a condition which the creditor is not bound to accept. (Civ. Code, §§ 1486, 1494; *In re Marriage of Green* (2006) 143 Cal.App.4th 1312, 1323; *Mission Ins. Group, Inc. v. Merco Construction Engineers, Inc.* (1983) 147 Cal.App.3d 1059, 1067-1068.) BNSF's tender of less than the full amount of the judgment did not suffice to stop the accrual of interest because it required Cordova to accept the amount offered in full satisfaction of the judgment and to waive his right to recover the rest of the judgment. Having found that BNSF was not entitled to full satisfaction of the judgment by virtue of the payment it tendered, the trial court correctly ordered BNSF to pay interest on the full amount of the judgment from the date of entry of judgment.

CONCLUSION

The judgment is affirmed. Plaintiff and respondent Randall Cordova is awarded costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

RICHLI
J.

MILLER
J.

16